# FRANCIS R. KAEFER et al.

## vs.

## STATE OF MARYLAND.

*Riot and Unlawful Assembly—Ssufficiency of Indictment—Evidence—Declarations—Rebuttal—Order for Appeal—Bill of Exceptions—Time of Signing.*

Except when the place is essential to the description of the offense, it is only necessary by proper allegations in the indictment to bring the offense charged within the jurisdiction of the court, which, in this State, and ordinarily, is gratified by alleging the county in which it was committed.          p. 156

The defense of former conviction, or plea of *autrefois convict,* is established by the production of the record of conviction, and parol evidence showing the identity of the parties and the offenses.          p. 156

While a definite averment as to the particular place of the offense might aid a traverser in establishing his defense of former conviction, it would not relieve him of the necessity of showing the identity of the offenses.          p. 157

A demurrer to the whole indictment cannot be sustained if any one of the counts is sufficient.          p. 157

An indictment against a number of persons for riot, unlawful assembly, and assault, *held* sufficient.          p. 157

On a prosecution for riot and unlawful assembly, the State contending that defendants, striking employees of a mining company, attacked employees who were still at work, and defendants claiming that they were merely, as a party, peaceably going to a mine for the purpose of picket duty, defendants could not testify as to declarations, made at the time by members of their party, as to their intentions.          p. 158

Each defendant could, however, testify to his intentions and purpose is going to the mine.          p. 158

Evidence as to whether it was usual, during this strike, for men from one section of the county to do picketing in another section, was irrelevant and inadmissible.          p. 159

On a prosecution for riot, unlawful assembly, and assault, during a strike, the State having produced evidence that defendants, striking employees, threw stones, used clubs, and fired shots, it could subsequently, after defendants had produced evidence that there were no acts of violence on their part until after shots were fired by employees still at work, ask a witness, for the purpose of rebuttal, what, if anything, happened before the shooting took place.          p. 159

What is rebutting evidence and what is evidence properly adducible in chief, is one addressed to the sound discretion of the court, and there will be no reversal for error in this regard, unless the ruling was both manifestly wrong and substantially injurious, no appeal lying, as a general rule, in such cases.
                                                    pp. 159, 160

Where the order for appeal directed the clerk to enter an appeal "from the verdict," *held* that the appeal should be treated as taken from the judgment, and should not be dismissed as being taken from the verdict, the verdict having been entered on the fourth of the month, the sentences imposed on the tenth, and the appeal entered on the eleventh.          p. 160

The record not containing any rule of the lower court providing when bills of exception must be presented to or signed by the court, and the State's Attorney having agreed to an extension of the time, *held* that the court having signed them within the agreed time, noting that this was done "after the expiration of thirty days from the rendition of the verdict only because of the agreement signed by the State's Attorney," they were not signed too late.          p. 161

*Decided March 16th, 1923.*

Appeal from the Circuit Court for Allegany County (WAGAMAN and DOUB, JJ.).

Criminal proceeding against Francis R. Kaefer and others for riot, unlawful assembly and assault. Said Kaefer and

certain other defendants having been sentenced to the House of Correction, they appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*John M. Henry* and *William C. Walsh,* with whom were *Walsh, Hughes, Heskett & Williams* on the brief, for the appellants.

*Alexander Armstrong, Attorney General,* with whom were *Lindsay C. Spencer, Assistant Attorney General,* and *Fuller Bernard, State's Attorney for Allegany County,* on the brief, for the State.

THOMAS, J., delivered the opinion of the Court.

The appellants were tried, convicted by a jury, and sentenced by the Circuit Court for Allegany County, under an indictment containing three counts, the first of which charged:

"that Francis R. Kaefer, Steve Adams, Richard Truly, Allen Yates, David M. Murphy, Thomas Neider, Edward S. Neat, Edward Hensel, Douglas Truly, Louis Zavodny, James E. Miller (alias Jake Miller), Edward Truly, Andy Yuhas, late of Allegany County aforesaid, with divers other evil-disposed persons to the number of fifty or more, to the jurors aforesaid as yet unknown, on the eighteenth day of September, in the year of our Lord, nineteen hundred and twenty-two, with force and arms, at Allegany County aforesaid, unlawfully, riotously, routously and tumultuously, did assemble and meet together to disturb the peace of the said State, and being so then and there assembled and gathered together, did then and there make great noises, riots, tumults and disturbances, and did then and there unlawfully, riotously, routously and tumultuously remain and continue together, making such noises, tumults and disturbances for a long space of time, to wit: For the space of one hour then

next ensuing, to the great terror and disturbance, not only of good subjects of the said State there inhabiting and residing, but of all other citizens of the said State there passing and repassing in and along the public streets and common highways there situate, in contempt of the said State and of its laws and to the evil examples of all others in like case offending and against the peace, government and dignity of the State."

The second count charged:
"that the said Francis R. Kaefer, Steve Adams, Richard Truly, Allen Yates, David M. Murphy, Thomas Neider, Edward S. Neat, Edward Hensel, Douglas Truly, Louis Zavodny, James E. Miller (alias Jake Miller), Edward Truly, Andy Yuhas, late of Allegany County aforesaid, with divers other evil-disposed persons to the number of fifty or more, to the jurors aforesaid, as yet unknown, on the eighteen day of September, in the year of our Lord, nineteen hundred and twenty-two, · with force and arms at Allegany County aforesaid, unlawfully, riotously, routously and tumultuously, did assemble and gather together to disturb the peace of the said State against the peace, government and dignity of the State."

And the third count contains the charge:
"that the said Francis R. Kaefer, Steve Adams, Richard Truly, Allen Yates, David M. Murphy, Thomas Neider, Edward S. Neat, Edward Hensel, Douglas Truly, Louis Zavodny, James E. Miller (alias Jake Miller), Edward Truly, Andy Yuhas, late of Allegany county aforesaid, with divers other evil-disposed persons to the number of fifty or more, to the jurors aforesaid, as yet unknown, being rioters, routers and disturbers of the peace of the said State heretofore, to wit: On the eighteenth day of September, in the year of our Lord, nineteen hundred and twenty-two, with force and arms, at the County of Allegany

aforesaid, unlawfully, riotously, routously and tu-
multuously, did assemble and gather together to dis-
turb the peace of the said State, and being then and
there so assembled and gathered together as aforesaid,
did then and there make great noises, riots, tumults
and disturbances, and then and there unlawfully, riot-
ously, routously and tumultuously remained and con-
tinued together, making such noises, riots, tumults and
disturbances as aforesaid, for a long space of time, to
wit:   For the space of an hour then next following,
and then and there while they so remained and con-
tinued together, unlawfully, riotously and tumultu-
ously, did make an assault in and upon one Chester
Hyde in the peace of God and of the said State then
and there being, and him, the said Chester Hyde, then
and there unlawfully, riotously, routously and tumult-
uously did beat, bruise, wound and ill-treat, so that his
life was greatly dispaired of, and other wrongs to
him, the said Chester Hyde, then and there unlawfully,
riotously, routously and tumultously did, to the great
damage of him, the said Chester Hyde, and to the great
terror and disturbance not only of all the liege inhabi-
tants of the said State there inhabiting, residing
and being, but also of all the other liege inhabitants
of the said State then passing and repassing in and
along the public streets and common highways of the
State there, in contempt of the said State and of its
laws, to the evil example of all others in like case
offending, and against the peace, government and dig-
nity of the State."

The defendants demurred to the indictment, and the de-
murrer was overruled, and this appeal brings up for review
the rulings of the court below on the demurrer, and on the
evidence embraced in three bills of exception.

It is stated in the brief of counsel for the appellants that
the grounds of the demurrer are: (1) "Because the indict-
ment did not sufficiently inform the defendants of the specific
offenses with which they were charged, so as to enable them

to properly prepare for trial," and (2) "Because a plea of former conviction or acquittal could not be pleaded to such an indictment." In support of these grounds the appellants insist that the indictment does not state the *place* where the offense was committed; that under it evidence could be offered showing that the defendants on the day mentioned committed the offense charged at Frostburg, Flintstone, Cumberland or any other place in Allegany County; "that in criminal cases no record is made of the testimony unless a reporter is asked for and provided, and that the record in the case usually consists simply of the indictment and the verdict of the court or jury," and that "if the defendants were again indicted for an unlawful assembly or riot in Allegany County on or about September 18th, 1922, * * * they would not know whether they were being indicted for the same offense or not, and if they did conclude that they were being indicted for the same offense and pleaded former conviction the docket entries in the present case would not indicate for what offense they had been convicted." In answer to this contention it may be said (1) that, except when the *place* is essential to the description of the offense, it is only necessary by proper allegations in the indictment to bring the offense charged within the jurisdiction of the court, which, in this State, and ordinarily, is gratified by alleging the county in which it was committed (*Hochheimer's Criminal Law,* sec. 150; *Acton* v. *State,* 80 Md. 547; 22 *Cyc.* 310; 14 *R. C. L.,* sec. 27 p. 181; 1 *Archbold's Crim. Pract. & Pleading* (Waterman's Notes), 279-280), and (2) that the defense of former conviction, or plea of *autrefois convict,* is established by the production of the record of conviction, and parol evidence showing the identity of the parties and the offenses. *Hochheimer's Criminal Law,* sec. 280, p. 176; 3 *Greenleaf, Evidence* (16th ed.), sec. 36; 5 *Ency. of Evidence,* sec. 5, p. 879. In *Greenleaf, Evidence, supra,* the learned author says: "The former judgment, in these cases, is pleaded with an averment that the offense charged in both indictments is the same; and the

*identity of the offense,* which may be shown by parol evidence, is to be proved by the prisoner. This may generally be done by producing the record, and showing that the same evidence, which is necessary to support the second indictment, would have been admissible and sufficient to procure a legal conviction upon the first." And see also cases cited in note 35, p. 880, in support of the statement in the text that, "in case of offenses which in their nature are capable of repetition, * * * the identity of the offenses cannot be presumed from the identity of the former and subsequent indictments, but must be proved."

While a more definite averment as to the particular place of the offense might aid a traverser in establishing his defense of former conviction, it would not relieve him of the necessity of showing the identity of the offenses, and is not required, except, as we have said, when the particular place is necessary in order to describe the offense charged. The demurrer being to the whole indictment, it could not have been sustained if any one of the counts was sufficient. *Avirett* v. *State,* 76 Md. 527; *Gunther* v. *Dranbauer,* 86 Md. 1. But the indictment seems to follow the forms suggested in *Hochheimer's Criminal Law,* pp. 490-491, and 2 *Archbold's Crim. Pract. & Pleading* (Waterman's Notes), pp. 935-937, and does not appear to be open to any serious objection on demurrer.

At the trial the State offered evidence tending to show that on the 18th of September, 1922, while a number of employees were on their way to work at the "Hoffa Brothers mine," near Barton, in Allegany County, they were met by a large number of men or strikers from other parts of the county, estimated in the evidence at from thirty-five to between one and two hundred, and including the defendants, who stopped them and forced them to retire by threats of bodily harm, and by using clubs and throwing stones and by discharging firearms, and that the employees so attacked retreated as best they could. On the other hand the evidence produced by the

defendant tended to show that they, and the others constituting their party, went there for the purpose of peaceably persuading the employees of the "Hoffa Brothers mine" from going to work, and that they did not "commit any act of violence or cause any disorder until after one of their men had been shot" by one of the employees of the coal company.

Douglas Truly, one of the defendants, testified that he lived at National; that he went to the Hoffa mine on the eighteenth of September on picket duty for the purpose of talking to some men that had been working and persuading them to stay away from work; that he reached there between six and six-thirty o'clock in the morning; that when he got there he saw and passed four or five men; that he did not stop, but walked on up the road, because he knew "if we got in a crowd together we would be violating the law." He was then asked by his counsel: "Was anything said by you or the others there about the way things should be conducted there?" He replied, "Yes, sir," and was then asked: "What was said, if anything?" The State objected to the question, and the first exception is to the refusal of the court below to permit the question to be answered. It is urged on behalf of the appellants that there was serious error in this ruling, because the object of the question was to show by the witness that the gathering together of the defendants and others in their party was for a lawful purpose, and that they did not, as alleged in the indictment, assemble unlawfully. How far the question of their guilt or innocence under any of the counts in the indictment was dependent upon their *original* object or purpose in assembling is not necessary to be determined in this connection (2 *Bishop's Criminal Law* (7th ed.) secs. 1150-1151), for we know of no rule of evidence authorizing them to introduce their own unsworn statements or declarations to prove their intentions. It was entirely permissible for each defendant to testify to his intentions and purpose in going to the mine, and the witness did so testify, as did other witnesses, but the court properly refused to per-

mit him to introduce his own statements or declarations, or the statements of those assembled with him, for the purpose of proving his intention.

The second exception was to the refusal of the court to permit one of the defendants, Russell Kaefer, to answer the following question: "Will you state, Mr. Kaefer, whether or not in picketing during this strike it was usual to have men from one section of the county do the picketing in another section?" We cannot see the relevancy of the evidence offered in this exception. The evidence tending to show that the men who were assembled on the occasion mentioned in the indictment did not live in the neighborhood of Barton did not reflect upon any element of the offense charged in the indictment, and the fact that it was usual, during the strike referred to, to have the picketing done by men from another section of the county, would not have tended to rebut any legitimate inference to be drawn from such evidence. But even if it could be said to be admissible for any purpose, the defendants, it would seem, got the benefit of such evidence in the statement of the witness that he had been out picketing before on different occasions, and "had been picketing out all along the line."

The only other exception was to the ruling of the court below permitting the witness Moore, who was called by the State in rebuttal, to state what, if anything, happened before the shooting took place. The evidence in chief produced by the State was to the effect that the strikers threw stones, used clubs, and fired shots, and the evidence in question was offered by the State in rebuttal of the evidence produced by the defendants to show that there were no acts of violence on the part of those who assembled at the mine until after shots were fired by the employees of the mining company, and was admissible for that purpose. Moreover, it has been frequently held that the question of what is rebutting evidence "and what is evidence properly adducible in chief" is one addressed to the "sound discretion of the court, and the appel-

late court will not reverse for an error on this point, unless the ruling of the court below was both manifestly wrong and substantially injurious," and that, "as a general rule, in such cases no appeal will lie." *Jones* v. *State,* 132 Md. 148; *Snowden* v. *State,* 133 Md. 636. .

In the order for appeal, counsel for the defendants directed the clerk of the court below to enter an appeal "from the verdict in" the case, and the State has made a motion to dismiss the appeal on the ground that there could be no appeal from the verdict.

Prior to the Act of 1892, ch. 506, appeals in criminal cases were entered before the interposition of the sentence, and the appeal did not bring up for review a ruling of the trial court on a demurrer to the indictment. Since the passage of that act (article 5, section 80 of the Code) the appeal in such cases is from the judgment, and the record includes the demurrers and exceptions as in civil cases. *Avirett* v. *State, supra.* The docket entries in this case show that the verdict was rendered on November 4th, 1922, that the sentences were imposed by the court on November 10th, and that the appeal was entered on November 11th. Under such circumstances we think the appeal should be treated as having been taken from the judgment, and that the motion of the State to dismiss the appeal on the ground that it was taken from the verdict should be overruled.

On the 15th of December, 1922, counsel for the defendants submitted to the court below a petition for an extension of the time for the filing and signing of the bills of exception to December 30th, 1922, and an agreement of the State's Attorney, dated the 12th day of December, 1922, consenting to such extension. On the 18th of December, 1922, the court below signed the bills of exception as of that date, and noted that they did so, "after the expiration of thirty days from the rendition of the verdict, only because of the agreement signed by the State's Attorney on the 12th day of December, 1922." In the case of *Balto. Bldg. Assn.* v. *Grant,*

41 Md. 566, the Court said: "It appears from the certificate that the formal bill of exceptions was signed by the judge on May 1st, 1874, some time after the judgment. Now there is nothing to show that it was not then competent for the judge to sign it; no rule of court is produced to the contrary; and the presumption is that it was done by consent of the parties, or in accordance with the leave of court before given allowing time for its preparation." In the case at bar the record does not contain any rule of the Circuit Court for Allegany County providing when bills of exception must be presented to or signed by the court and, in view of the agreement of the State's Attorney, the bills of exception cannot be said to have been signed too late.

Finding no reversible error in any of the rulings of the court below, the judgment appealed from must be affirmed.

*Judgment affirmed, with costs.*