## HARRY COHEN *v.* STATE OF MARYLAND
### [No. 16, October Term, 1937.]

*Decided December 9th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Isaac Lobe Straus* and *Harry O. Levin,* for the appellant.

*Hilary W. Gans, Deputy Attorney General,* and *Philemon B. Coulter, Assistant State's Attorney,* with whom was *Herbert R. O'Conor, Attorney General,* on the brief, for the State.

SLOAN, J., delivered the opinion of the Court.

Harry Cohen, the appellant, was indicted on charges of inciting a riot and for riot in the City of Baltimore on the 12th day of December, 1936. There were six counts in the indictment, the first four charging Harry Cohen with inciting to riot; the fifth and sixth charging him, with divers other persons, with rioting. The defendant demurred to the indictment, and to each count. The demurrer was sustained to the first and third counts, and overruled as to the others, and the adverse rulings on the demurrers require consideration before taking up the bill of exceptions. *Kendrick & Bros. vs. Warren Bros. Co.*, 110 Md. 76, 72 A. 465; *Kaefer v. State*, 143 Md. 151, 160, 122 A. 30; Code, art. 5, secs. 2, 86.

The only objection to the second and fourth counts is that there is no time fixed for the commission of the offense of inciting riot, and this applies to the fifth and sixth counts, as well, on the theory that the time was only alleged in the first count, and that, the demurrer having been sustained, it took it bodily out of the indictment, and the statement of time in the remaining counts "on said day in said year" was not referable to the date stated in the first count. The decision of the trial court on the demurrers to the first and third counts did not take them out of the record; it meant that the charge attempted to be made was not sufficiently alleged, and the defendant could not be tried on those counts. No authority was cited on this point, but, to reject it, it is only necessary to refer to 31 *C. J.* 680, secs. 209, 686-688, 217-223, and the cases there cited.

The objection to the fifth and sixth counts was argued on the assumption by the defendant that it did not come within the definition of "riot," and that, unless there was an indictment of three named defendants, the charge cannot be sustained. In some states the charge of riot is statutory, but in this state it is a common law offense. The fifth count charged that "Harry Cohen, on the said day in said year, at the City aforesaid, together with divers persons to the Jurors aforesaid unknown, unlaw-

fully, riotously and tumultuously, did assemble and gather together to disturb the peace of the said City and State; and then and there being so gathered together, did make a great noise, riot, tumult and disturbance, and then and there unlawfully, riotously and tumultuously remained and continued together for a long space of time, to wit, for the space of fifteen minutes and more next following, to the great terror and disturbance of the persons thereabout inhabiting, residing and being, and passing and repassing upon the public highway there, and to the terror of the people of the said State," etc. The sixth count charged that "Harry Cohen, on the said day in the said year, at the City of Baltimore aforesaid, together with divers persons to the jurors aforesaid unknown, unlawfully, riotously and tumultuously, did assemble and gather together to disturb the peace of the said City and State; and then and there being so assembled and gathered together, then and there riotously did assault, intimidate and interfere with divers persons to the Jurors aforesaid unknown, and did destroy certain vehicles, to wit, certain taxicabs, then and there being the property of certain persons to the Jurors aforesaid (unknown), to the great disturbance and terror of the people," etc.

The defendant contends that these counts omit many of the definitions of riot at common law, and essential to an indictment. We agree with all of the definitions, but disagree with the defendants' conclusions as to their effect on this indictment. At common law it was necessary that three or more persons be unlawfully assembled to carry out a common purpose in such violent or turbulent manner as to terrify others, and assault or destruction of property may or may not be incident to the execution of the riot. The assembly must be unlawful, else there is no riot, and the unlawful assembly must be charged in the indictment. *Hochheimer, Crim. Law,* secs. 429-431. In *Kaefer v. State,* 143 Md. 151, 122 A. 30, 31, thirteen named persons were indicted for unlawful assembly and riot, "with divers other evil-disposed persons to the num-

ber of fifty or more." The defendants there demurred, and the demurrer was overruled, and on appeal affirmed. The only substantial, not material, difference between that indictment and this one, is that in the *Kaefer* case thirteen were named as rioters, while in this case there is one. One person can be charged with rioting, provided he is alleged to have been so engaged with at least two other persons. If known to the grand jury, they should be indicted; if unknown, it is essential that the indictment so state. If three are indicted by name, and there is no charge that divers others were associated with them, then a conviction of two would be invalid. In *Commonwealth v. Berry*, 5 Gray (71 Mass.) 93, Berry, Salisbury, and Foster, "together with divers other evil disposed persons * * * committed a riot." They were tried separately. In *Berry's* case the trial judge charged the jury "* * * if the defendant joined in the riot with the two persons named, or any other two persons, though unknown to the grand jury, it would be sufficient." On appeal the Supreme Judicial Court said: "It is undoubtedly true that a riot cannot ordinarily be committed by one person. It is the acting in concert, the unlawful combination, which constitutes the offense. The direction was strictly correct. Whether the other rioters were named in the indictment, or not, proof of a riot in which any two other persons joined with the defendant was sufficient." *Martin v. State*, 115 Ga. 255, 41 S. E. 576. In the case of *The King v. Sudbury, Heaps and others*, 12 Mod. 262, Case 473, 1 Lord Raymond, 484, "Defendants were indicted for that they *riotose et routose assemblaverunt*, and so assembled committed a battery on Mary Russell. Two of them were found guilty and all others were acquitted; and judgment was arrested for two cannot commit a riot." It was there said by Lord Holt, C. J., "If the indictment had been, that the defendants with divers other disturbers of the peace, had committed this riot and battery, and the verdict had been, as in this case, the King might have had judgment." See 3 *Bishop's New Crim. Proc.*, sec. 998 (2) ; 3 Salk, 317, 90 Eng. Rep.

1251; 91 Eng. Rep. 846; 54 *C. J.* 835, sec. 19. We find no objection to the second, fourth, fifth and sixth counts of the indictment, the questions raised by the defendant being, in our opinion, on matters which can only arise on exceptions to evidence, which will be later herein discussed.

There were sixty-nine exceptions reserved by the defendant in the course of the trial, of which sixteen were abandoned on appeal. The first nine arose on the examination of the petit jurors to ascertain their qualifications, all others on objections to evidence, except the last three, which were on motions for a mistrial, and, in addition to the questions raised by the bill of exceptions, the defendant, in this court, attacks the sentence, which is a fine of $5,000 and three months in the Maryland Penitentiary, as unconstitutional.

Exceptions 1 to 9, inclusive, were all to the refusal of the court to allow defendant's counsel to interrogate the petit jurors, who were questioned by the court, to the end that a list of twenty qualified jurors might be furnished from which each side had the right to strike four. Code, art. 51, secs. 13 and 17. No exceptions had been taken to any questions put to the jurors by the court, all of which were designed to ascertain whether they were free from bias or prejudice, and all of which went to their qualifications to sit in the case. The defendant's counsel during this examination asked some additional questions, which the court refused to allow him to do, and to which rulings exceptions were taken. After the first two jurors had been examined by the court, the court suggested to defendant's counsel that he make up a list of questions going to the qualifications of the jurors, and from them he would ask such questions as he thought touched their qualifications. Only three of the questions submitted went to the qualifications, and these, in substance at least, had been asked the first two jurors, and it was agreed in the record that substantially the same questions had been propounded to each prospective juror. The impression we get from these nine exceptions is that the defen-

dant is not aggrieved, certainly not injured, by the refusal to have any specific questions asked, but for the refusal of the court to allow him to take over the examination of jurors. "It is only when permitted by the court, in the exercise of its discretion, that counsel may examine such jurors." *Beck v. State,* 151 Md. 615, 620, 135 A. 410, 412. "The purpose of the examination is to ascertain, as nearly as may be learned from a juror's answers, whether he is so free of bias or prejudice as to give the one to be tried a fair trial, and it is the duty of the court to furnish him such jurors." *Lee v. State,* 164 Md. 550, 557, 165 A. 614, 617. The examination which the party is thus entitled to have made is only a means to the end of ascertaining the existence of cause for disqualification, and is not permitted "for any other purpose." *State v. Welsh,* 160 Md. 542, 154 A. 51; *Whittemore v. State,* 151 Md. 309, 134 A. 322; *Lockhart v. State,* 145 Md. 602, 613, 125 A. 829. In the examination of the list of jurors we find no error.

The indictment in this case arose out of a strike which had been voted on December 4th, 1936, by the Chauffeurs and Teamsters Union of Baltimore, an affiliate of the American Federation of Labor, against the Diamond Cab Company, operated and managed by the Association of Independent Taxi Operators, Inc., being an association of 126 owners of 329 taxicabs, of whom about 40 drive themselves, and against the Yellow Cab Company. The facts in the record are so scrambled and disconnected that it is difficult to write a connected story of the strike, but it seems to have become effective against the Diamond Cab on December 12th, 1936, when the first riot or series of riots occurred. On December 16th the outbreaks became more serious, and on the 20th a conference of all elements involved was called by the Governor, as a result of which a truce was agreed to from that day to the 2nd day of January, 1937. Peace, however, lasted only until December 29th, when there was another outbreak. It does not appear just when the strike got under way against the Yellow Cab Company, but Albert

E. Heath, a witness called by the defendant, testified that he had been convicted for throwing bricks on February 8th, and that "* * * there had not been any Yellow Cabs rolling from the 31st of December until the morning of the 8th of January. That there were about 150 Yellow Cab men picketing the place, and about seventeen Yellow Cabs rolled out. That when they came out they were assaulted with missiles, such as rocks, stones, beer bottles, milk bottles, whiskey bottles, umbrellas. That he hit the first one but did not have anything to do with the rest of the cars." The record does not show any more outbreaks between January 8th and February 1st. On February 11th the defendant made the last speech appearing in the record at a meeting held on Greenmount Avenue, which will be mentioned later. The defendant appears to have been in charge of the taxicab strike, in which the two companies were involved, and directed its activities. As a result of numerous disturbances, breaches of the peace, assaults, and destruction of property, he was indicted for inciting to riot and for rioting.

The second count of the indictment charges the defendant with inciting to riot on the 12th day of December, 1936, the fourth, with inciting to riot on the 12th day of December, 1936 "* * * and thence continually until and including the 29th day of December," 1936; the fifth and sixth counts charge him with riot on the 12th day of December, 1936.

The defendant's main, and apparently the only serious, contention as to the admissibility of evidence is that no evidence of any acts are admissible subsequent to the time alleged in the indictment, and this with particular reference to the testimony of a newspaper reporter, covered by exceptions 39 to 44, inclusive, regarding the meeting of February 11th, 1937, when the defendant is reported, amongst other things, to have said: "The war is on and we are going to take the battle into our own hands." He prophesied that "* * * 'Some of you are going to get into trouble, but we will get you out' and there was a mighty shout through the old brick structure." He cites and

quotes many authorities, five from this court, in support of this contention. . In one of them, *Dobbs v. State,* 148 Md. 34, 129 A. 275, it was held that, on a prosecution for murder while committing a robbery, evidence of another robbery by the traversers was inadmissible; *Young v. State,* 152 Md. 89, 136 A. 46, was a case of embezzlement; *Avery v. State,* 121 Md. 229, 88 A. 148, was a case of abortion; in *Weinstein v. State,* 146 Md. 80, 125 A. 889, the charge was perjury; and in *Meno v. State,* 117 Md. 435, 83 A. 759, the charge was abortion. There is a class of cases in which evidence of other like offenses may be received from which intent or guilty knowledge may be inferred, but it is not necessary to cite them here. The cases cited by the defendant have no application to this case. This case is a misdemeanor of a kind in which time is not of the essence of the offense.

In such cases the day named in the indictment need not be proved, but it must be a day prior to the indictment within the period of limitations, *Capritz v. State,* 1 Md. 569, 574; *World v. State,* 50 Md. 49, 55; *State v. Kiefer,* 90 Md. 165, 176, 44 A. 1043; *Archer v. State,* 145 Md. 128, 138, 125 A. 744; *Ledbetter v. United States,* 170 U. S. 606, 612, 18 S. Ct. 774, 42 L. Ed. 1162, 1164; nor in a case of the character before us is the State bound to the events of a single day. In 1 *Chitty Crim. Law,* 224, it is said: "Where an offense is committed by the doing of several acts at separate times, they may have been stated to have been done at the same time." In indictments "* * * for high treason, overt acts committed at different times may be laid on one day." In the case of *Rex v. Gordon,* 21 Howell's State Trials, 11 Eng. Rul. Cas. 282, the defendant, Lord Charles Gordon, was indicted for treason, and evidence of inciting riots from June 2nd to June 10th, 1780, was all received as evidence of an offense. In that case, Lord Mansfield, C. J., with Willes, Ashhurst and Buller, JJ., sat. In *Wharton's Crim. Evidence* (10th Ed.), 501, 502, it is said: "In case of feuds and riots and strikes or disturbances, where parties are arrayed against each other for weeks, and people are so

absorbed in the collision so as to be conscious of little else, then all such parties say and do under such circumstances is as much a part of the *res gestae* as the blows given in the homicides, for which particular prosecutions may be brought," and further says (section 263, page 502): "* * * Declarations claimed to be part of the *res gestae* may precede, accompany or follow the transaction to which they relate"; and cites *State v. Ridgely,* 2 H. & McH. 120, and Lord Gordon's case, *supra.* All of which means that the evidence of riots and disorders prior to the date of the indictment are centered in the judgment in this case, and are concluded by it. The defendant in this case seems to be of the same opinion, for in 173 Md. 235, 195 A. 540, at the present term of this court, on an indictment for a riot on the 12th day of February, 1937, he has filed a plea of former conviction of the offense there charged.

Many of the exceptions were taken to evidence of disturbances at which the defendant was not present as an active participant, or were not shown to be directly incited by him. There was no effort to conceal the fact that he was directing the strike, present at all conferences, making speeches before and after every outbreak and disturbance, and this continued from December 12th, 1936, to February 11th, 1937. There was evidence that in his exhortations he had used exciting, threatening, and inciting expressions. (Meetings were held nearly every night.) In the beginning, in the drive for membership in the union, drivers, he said, "* * * would join and like it." If drivers or owners attempted to run cabs on the streets "* * * they are liable to get mussed up." At a conference on December 16th of that year he said, "In order to be a successful organizer you have to be militant." On December 30th, during the truce, at the office of Mr. Carney, the Diamond Cab's attorney, with two other active participants in many disturbances, he said, "* * * this agreement is going to be signed tonight and you will like it. These cabs won't roll, and if they do, we'll bust them up." On December 12th, at Twenty-

ninth Street and Greenmount Avenue, he was addressing a crowd from the back of a cab: "* * * It's up to you boys to stop them. I don't care how you do it, and furthermore you know I am going to back you," or "I am in back of you" and "backing you." At the meeting on the night of December 16th he said, "Boys, you are to be congratulated for the wonderful job you done. Keep the good work up, whatever you do, keep those cabs on that lot and don't let them roll." In a speech on December 12th, he is reported by a witness to have said, "Keep the cabs on the lot, no violence, but if they try to move those cabs use your own judgment," at which "* * * there was quite a laugh amongst the boys." At a meeting at Moxley Hall, one witness said he "* * * did not hear Mr. Cohen advocate violence." "He said the men knew what to do and to do it," and they did by attacking and injuring drivers, and by the damage and destruction of cabs.

The organization had a right to strike and to unionize the employees of the cab company, but, to accomplish this purpose, its officers and members had no right to resort to violence, disturbance of the public peace, or to create a reign of terror. The statements attributed to the defendant (and there were many more in evidence) were a sufficient foundation for the court to admit the evidence of disorders at which Cohen was not present, as having been incited, encouraged, and aided and abetted by him, and when, as a result of his exhortations, said riots were committed, if the jury should so find, he might be held accountable either as principal or accessory, or both. 54 C. J. 834. The defendant denied practically every statement so testified to, and in many instances was supported by his associates, many of whom had been found guilty of various breaches of the peace, and by other witnesses, but it was not within the province of the court to pass on the weight of the evidence in a state where the jury in criminal cases are the judges of the law and of the facts.

Twelve of the exceptions, 27 to 38, inclusive, arose

during the examination of Allen H. Gosnell, secretary and treasurer of the Chauffeurs and Teamsters Local Union at Baltimore. He was asked to testify, and did testify, of the payment of fines of some ten to twelve members of the local union who had been found guilty or pleaded guilty to breaches of the peace during the taxicab strike. The defendant cites no authorities against the admissibility of such evidence, but charges that the only purpose for which it could have been introduced was to influence the minds of the jurors and poison them against the appellant.

The only other exceptions which require special attention are the last three, Nos. 67, 68, and 69. When the defendant took the stand, he was asked a number of preliminary questions covering the period of his life, and he testified that, until he became business agent of the truck drivers' union at Baltimore, about three years before, he had been engaged in some form of electrical work, for twenty-eight years, with the exception of the years 1907 to 1911, when he was in the United States Navy, and he was then asked: "Were you honorably discharged from the United States Navy?" and he answered "Yes." An objection was here interposed by the state's attorney, and the court said: "That is not the proper way to try your case, to bring your past army or navy record; the issue here is of December, 1936, not his general history." The defendant objected to the remarks of the court and moved to withdraw a juror and have a mistrial declared, and to the refusal of the court so to do an exception was taken. The defendant, in his brief, practically admits that the question of his discharge from the Navy had no relevancy' to the matter in issue, but contends that the rebuke from the court was so prejudicial to the defendant that the trial of the case ought not to have been continued. The case had occupied two days and part of a night, seventy-five witnesses had been examined, and there was not enough in this remark to require the court to start all over again, and, in view of what the court said almost immediately thereafter, the

jury certainly could not get the impression that the judge presiding at the trial was doing anything but to give the defendant a fair trial, and was making no effort to usurp the functions of the jury.

There is no exception No. 68 in the record, but there is a No. 69, and evidently they were the same exception. It appears from the record that "(The Court) At 12:15, on the morning of the 3rd of March, in the opening argument of the State's Attorney, addressing the jury, some reference was made to the fact of the issuance of a bench warrant by this court, for this Defendant, in connection with this inquiry. Mr. Levin, of counsel for the defense, objects to the reference and moves for the withdrawal of a juror and the declaring of a mistrial. The court overrules the motion, and notes an exception in favor of the defense and says to you, gentlemen of the jury, this: that there was no evidence in the case of that fact, if fact it be; that the evidence, as I recall the testimony, is simply of a certain date—the 15th of February, I think was the date given in the evidence—of a citation before the Grand Jury, so that whatever the basis of the origin of the inquiry may be, you wholly disregard any impression that the fact might create in your mind, if you thought it was a fact, that the inquiry was instituted, in the first instance, by the issuing of a bench warrant, either by this or any other court, so just wholly disregard that thought, let it not weigh on your minds in any form or shape. You are to be governed entirely by the evidence in the case, which you have heard under oath from the witnesses on the stand. At the request of the defense counsel, I have already granted them what they call an advisory instruction, which they will read to you, no doubt, in the course of the argument and which you can take to your jury room—and I might just comment on it right here—it was prepared by Mr. Levin and is granted: The Court advises the jury that under the law of the State of Maryland, the Defendant in every criminal case is always presumed to be innocent until proven guilty beyond a reasonable doubt; the Court further advises the

jury, that the fact that the Defendant was indicted by the Grand Jury furnishes no evidence whatsoever of his guilt of the charge in the indictment, but that the burden of proof of guilt remains upon the State to prove beyond a reasonable doubt, by evidence produced at the trial, and I grant that advisory instruction with this additional note, this is only an advisory instruction, given at the request of counsel for the Defendant and is not binding on you; you are the judges of the facts and the law.' That will be allowed to be taken to your jury room with you."

The sixty-ninth exception then follows, the record saying: "The Defendant objected to the ruling of the Court in refusing to withdraw a juror and continue the case." It is evident, therefore, if these two exceptions, 68 and 69, have any meaning at all, it is to the refusal of the court to declare a mistrial because of the alleged remark of the state's attorney regarding a bench warrant. When objected to by the defendant's counsel, the court very promptly—and we think fully—explained to the jury that they should give it no attention, and disregard it entirely.

With regard to these motions for mistrial, what was said by Justice Brown in *Dunlop v. United States,* 165 U. S. 486, 17 S. Ct. 375, 379, 41 L. Ed. 799, may be said here: "If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since, in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation," and what was said in *Toomer v. State,* 112 Md. 285, 293, 76 A. 118, 122, may be applied here, and that is: "In the absence of something to show that the jury was misled or influenced to the prejudice of the prisoner by such remarks the lower court would not have been justified in setting aside the verdict, nor would this court be warranted in reversing the judgment appealed from." *Citizens Mutual Fire Ins. Co. v. Conowingo Bridge Co.,* 116 Md. 422, 440, 82 A. 372; *Rasin v. State,* 153 Md. 431, 442, 138 A. 338.

The statement of the state's attorney's remarks con-

tained in the record is so meager that it is impossible for us to know just what he did say and to draw any conclusion therefrom, but, whatever they were, the prompt action of the court with respect to them, in our opinion, satisfied fully the demand and right of the defendant for a fair trial, and, after the statement made by the court, it is safe to assume that the jury paid no attention to it and was not influenced by it. *Wolfe v. State, use of Brown*, 173 Md. 103, 194 A. 832, 839.

The defendant raises the question in this court of the validity of the judgment of sentence "* * * as illegal and void because cruel and unusual." The defendant was sentenced to pay a fine of $5,000 and costs and to be confined in the Maryland Penitentiary for the period of three months. No decision of this court has been cited by the defendant, except the case of *Backus v. State*, 118 Md. 536, 539, 85 A. 501. The reference to that case is to so much of the opinion as dealt with the collection of the fine there imposed. There is no contention in this case that the court did not have the power to impose the fine so levied against the defendant. The burden of the authorities cited is that, when a fine is imposed, it should be done with due regard to the ability of the defendant to pay and, while we have no evidence in the record of his financial responsibility, the defendant would have us assume from his statement that up to three years ago he had been an electrical worker, that the payment of this fine by him would be hopeless, and that the penalty would be hanging over him all his life if he was unable to pay. If he cannot pay the fine, then, on a showing of insolvency, he would be entitled to his discharge from the custody of the sheriff of Baltimore City, under section 3 of article 38 of the Code, in six months.

The consequences of his offense were serious, and violations of the law such as he was found guilty of provoking and committing cannot be minimized. In the imposition of sentence, the court must not only consider the defendant, but, in cases of serious import, the example to others of like inclination. If the defendant cannot

pay the fine imposed, or has no means whereby he can raise it, then it means that he must take a sentence of six months in jail in addition to the confinement in the penitentiary. Another thing which may have influenced the court in imposing the sentence was that the defendant had boasted to his followers that, if they got into trouble, he would protect them, and there is evidence in the record that many of those who were fined had their fines paid for them, coming from the same source which was behind the defendant.

The exact question was not decided in the case of *Dougherty vs. Superintendent of Maryland House of Correction*, 144 Md. 204, 124 A. 870, but it is there held that an act conferring jurisdiction upon a justice of the peace to impose a maximum fine of $5,000 and a maximum sentence of imprisonment for five years, in the case of any person who shall operate or be an occupant of any motor vehicle which he knows or has reason to believe has been stolen, was not unconstitutional. If such a penalty in a misdemeanor, imposed by the Legislature, was held by this court to be constitutional, we are unaware upon what theory we should hold this to be an invalid sentence.

Finding no reversible error in any of the rulings of the court on the demurrer, on the examination of petit jurors upon their *voir dire*, in the rulings on the evidence, on the motion for mistrial, or in the sentence imposed, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*

On Motion for Reargument.

The appellant, Harry Cohen, has filed a motion for reargument, the main reason for which is on a question which was not raised at the trial of the case or in his brief or at the argument on appeal, and that is that, because of the sentence to confinement in the penitentiary, he was entitled in the selection of a jury to twenty peremptory challenges. We held that he was entitled to a list of twenty qualified jurors, from which he and the

State were each entitled to strike four, the case being a common law misdemeanor, and that the result of the court's questioning was to furnish a qualified list.

This court could not, even if the question had been raised on appeal, have considered the contention for twenty peremptory challenges, as we cannot consider on appeal questions not "tried and decided by the court below." Code, art. 5, sec. 10.

In his motion for reargument the appellant begins by saying: "A reargument of the cause should be granted to correct and clarify certain error and confusion in the law disclosed in the opinion in this appeal."

Article 51, section 19, of the Annotated Code of Maryland, 1924 (Act of 1912, ch. 846), provides: "The right of peremptory challenge shall be allowed to any person who shall be tried on presentment or indictment for any crime or misdemeanor, the punishment whereof by law is death or confinement in the penitentiary, and to the State on the trial of such indictment or presentment; but the accused shall not challenge more than twenty nor the State more than ten jurors, without assigning cause."

There is no need to discuss this statute nor the numerous authorities so liberally cited and quoted by the appellant, as the answer to it, which was not noted in the motion or argument therein by the appellant, and was evidently overlooked by him, is contained in section 700, article 27, of the Code (Act of 1918, ch. 196, sec. 654), the applicable parts of which are:

"700. When any person is convicted, before any Circuit Court of any County, or the Criminal Court of Baltimore, of any crime, committed after this Act takes effect, and punishable by any imprisonment whatsoever or by fine and imprisonment (other than imprisonment in default of fine), said Court may, in its discretion, sentence such person to imprisonment in jail or in the Maryland House of Correction or in the Maryland Penitentiary. The term of such imprisonment in any of said institutions shall be in the discretion of the Court, unless a maximum term of imprisonment is prescribed by law, in which

event the imprisonment imposed shall not exceed the maximum so fixed. * * *

"It is expressly provided, however, that nothing in this section shall be construed to add to, alter or change the class of crimes, as they existed before this Act takes effect, with respect to the right of challenge or with respect to the fees in criminal cases, or to make any crime infamous, by reason of any sentence to the Maryland Penitentiary, or transfer thereto, which would not have been an infamous crime before this Act takes effect." See *Archer v. State*, 145 Md. 128, 125 A. 744.

The other matters mentioned in the brief on the motion were presented at the argument and on the brief on the appeal, and were considered by this court and decided.

*Motion for reargument overruled.*