## RICHARD BRISCOE *v.* STATE OF MARYLAND

[No. 79, September Term, 1967.]

*Decided April 1, 1968.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Ronald M. Sharrow* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert Fertitta, Assistant State's Attorney for Baltimore. City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Richard Briscoe, was convicted by a jury, Judge J. Gilbert Prendergast presiding, in the Criminal Court of Baltimore, of the common law offense of riot and was sentenced to the Maryland Penitentiary for a term of one year, to run consecutively with the sentence he is now serving in that institution.

On appeal he raises three contentions:

1. That Indictment No. 3520 under which he was indicted was faulty.
2. That the evidence presented by the State was insufficient to support his conviction.
3. That the consolidation of his case with that of one Cletus Bane, Indictment No. 3749, was prejudicial to appellant's right to a fair and impartial trial.

On July 8, 1966, a riot took place in the Maryland Penitentiary. It began about 12:00 noon in the prison yard and approximately two hundred inmates were directly involved. Order was not restored until about 4:30 p.m. on that day. During the course of the riot considerable damage was done to the institution. The commissary was set afire and looted, fires were started in the industrial shop building, the Print and Tag shop and in the institution's laundry. While the fires were being fought by the Baltimore City Fire Department, the inmates involved were seen running and milling about the prison yards leading off of the dining hall and commissary, hurling missiles and smashing windows. The warden put the Penitentiary's riot plan in effect and the prison guards were reinforced by the Baltimore City Police Department and their K-9 Squad. During the riot, the inmates attempted to storm the institution's power house but were repulsed by the guards and City Police. The entire contents of the commissary were taken by the inmates involved during

the looting of that building. The damage to the buildings and losses from the commissary were estimated at approximately $750,000.

The appellant was identified by three of the Correctional Officers of the institution as a participant in the riot. Two of the witnesses testified that he was observed to be actively engaged in looting, removing cartons of cigarettes and other packages from boxes and handing them out to other inmates and appropriating to himself at least one carton of cigarettes. The other witness testified that at the time the prisoners were attempting to storm the power house, he saw appellant carrying a piece of lumber, 2 by 3 feet long, waving it around about his head and shouting at the police.

Appellant testified in his own behalf and denied any participation in the riot, although he admitted being in the yard. No other witnesses testified for the defense. A motion for judgment of acquittal was made at the end of the State's case, which was denied by the court. His motion for judgment of acquittal was renewed at the end of the entire case and was again denied.

## I

The indictment under which appellant was indicted is drawn in one count and charges "that Richard Briscoe late of said City, on the eighth day of July, in the year of our Lord nineteen hundred and sixty-six, at the City aforesaid together with divers persons to the Jurors aforesaid unknown, unlawfully, riotously and tumultuously did assemble and gather together to disturb the peace of the said State; and then and there being so gathered together did make a great noise, riot, tumult and disturbance, and then and there unlawfully, riotously and tumultuously remained and continued, together for a long space of time, to the great terror and disturbance of the persons thereabouts inhabiting, residing and being; and to the terror of the people of the said State," etc.

Appellant complains that the indictment is invalid because (1) there is no allegation of intent therein, and (2) that the names of third persons who are necessary parties to the consummation of the offense charged and who constitute a necessary part of the description of the offense are not named.

Appellant's attack on the validity of the indictment has been fully answered by the Maryland Court of Appeals in *Cohen v. State*, 173 Md. 216, 195 A. 532, rearg. den. 173 Md. 216, 196 A. 819, cert. den. 303 U. S. 660, 58 S. Ct. 764, 82 L. Ed. 1119.

The language of the fifth count of the *Cohen* case is practically identical with the wording of the indictment under which appellant was indicted.[1] In the Cohen case the defendant argued that the fifth and sixth counts did not come within the definition of "riot" and that unless there was an indictment of three named defendants, the charge cannot be sustained.

In answering this argument, the court in defining "riot" said:

> "The defendant contends that these counts [5th and 6th] omit many of the definitions of riot at common law, and essential to an indictment. We agree with all of the definitions, but disagree with the defendants' conclusions as to their effect on this indictment. At common law it was necessary that three or more persons be unlawfully assembled to carry out a common purpose in such violent or turbulent manner as to terrify others, and assault or destruction of property may or may not be incident to the execution of the riot. The assembly must be unlawful, else there is no riot, and the unlawful assembly must be charged in the indictment. *Hochheimer, Crim. Law*, secs. 429-431."

The court then pointed out that:

> "One person can be charged with rioting, provided

---

1. The fifth count charged that "Harry Cohen, on the said day in said year, at the City aforesaid, together with divers persons to the Jurors aforesaid unknown, unlawfully, riotously and tumultuously, did assemble and gather together to disturb the peace of the said City and State; and then and there being so gathered together, did make a great noise, riot, tumult and disturbance, and then and there unlawfully, riotously and tumultuously remained and continued together for a long space of time, to wit, for the space of fifteen minutes and more next following, to the great terror and disturbance of the persons thereabout inhabiting, residing and being, and passing and repassing upon the public highway there, and to the terror of the people of the said State," etc.

he is alleged to have been so engaged with at least two other persons. If known to the grand jury, they should be indicted; if unknown, it is essential that the indictment so state. If three are indicted by name, and there is no charge that divers others were associated with them, then a conviction of two would be invalid."

In concluding that there was no objection to either the fifth or sixth counts of the indictment the court, quoting from *Commonwealth v. Berry,* 5 Gray (71 Mass.) 93, said:

"It is undoubtedly true that a riot cannot ordinarily be committed by one person. It is the acting in concert, the unlawful combination, which constitutes the offense. * * * Whether the other rioters were named in the indictment, or not, proof of a riot in which any two other persons joined with the defendant was sufficient."

Here, not only did the indictment allege that the defendant, together with divers persons to the jurors unknown, unlawfully, riotously and tumultuously, did assemble, but the proof showed that approximately two hundred inmates of the penitentiary participated. All those known were indicted, but since it would have been an unreasonable burden on the State to name them all in one indictment, they were indicted separately.

The argument that the indictment contains no allegation of intent therein presents no problem. The definition of "riot" in the *Cohen* case does not set forth as an essential element of the crime of riot a specific intention. 77 C.J.S. *Riot* §6, p. 426, says:

"It has been said that 'a mutual intent to assist one another against any who shall oppose them' is an element of the offense of riot, but it seems that, while this specific intention may be held by rioters, it is not in general essential to the offense, and a previous agreement or conspiracy need not be shown. The intention which is generally an element of the offense is the intent to join in or encourage the acts which constitute

the riot, namely, the assembly, violence, turbulence, and the act violently and turbulently performed."

See also 2 Wharton, *Criminal Law and Procedure,* §862. Since this is a matter of proof, it is not an essential requisite of the indictment.

We find no objection to the indictment returned against appellant in this case.

## II

Appellant next challenges the sufficiency of the evidence. He contends that the State failed to prove all of the essential elements of the crime of riot as defined by the trial judge in his instructions to the jury. The trial judge defined riot as "the disturbance of the peace by three or more assembled persons to carry out a common purpose in such violent and turbulent manner as to terrify others." Appellant argues that terror of others is an essential element which the State failed to prove. This argument is based on the fact that the State offered no direct evidence to show that any of the witnesses, inmates of the penitentiary, or residents of the City of Baltimore were placed in fear or terror as a result of the riot.

In order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary that there be no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Agresti v. State,* 2 Md. App. 278, 234 A. 2d 284 (1967); *Loker v. State,* 2 Md. App. 1, 233 A. 2d 342 (1967); *Graef v. State,* 1 Md. App. 161, 228 A. 2d 480 (1967).

There is ample evidence in the record in this case from which the jury could find that a disturbance of the peace took place in the Maryland Penitentiary in which approximately two hundred inmates assembled to carry out a common purpose in a violent and turbulent manner and that such conduct on their part could terrify others, both in or out of the institution. The testimony shows that the inmates involved were behaving tumultuously and in a violent manner, smashing windows, burning and looting. Also, the news was broadcast over the radio that there was trouble at the penitentiary and for all officers to report. Moreover, there may be a riot, even though no person or

persons are actually terrified, if the violent and turbulent execution of any unlawful act committed by a sufficient number of persons tends to alarm and terrify law-abiding citizens in the peaceful exercise of their constitutional rights and privileges. 77 C.J.S. *Riot* §10, p. 427-428. See also 2 Wharton, *Criminal Law and Procedure,* §864.

We find appellant's second contention to be without merit.

### III

Appellant's final contention is that the consolidation of his case with that of Cletus Bane, another defendant charged with participating in the same riot for which appellant was charged, was prejudicial to his right to a fair and impartial trial.

Appellant admits that he has no legal authority for this contention, but seeks to rely "on the fundamental faults of human nature and the basic rights of an accused to be tried on the merits of his case." He argues that Bane was a white man, neatly dressed and softspoken, who offered a good appearance, while appellant was an austere Negro whose speech was wanting in mellowness, dressed in prison working attire and who was serving a life sentence for murder.

Maryland Rule 734 provides that: "The court may order two or more indictments to be tried together if the offenses and the defendants, if there be more than one, could have been joined in a single indictment." The matter is within the discretion of the court and we see no abuse of discretion. The answer to appellant's contention is that there was a drastic contrast in the evidence produced against the appellant and the other defendant. Only one witness testified against Cletus Bane and that witness' testimony was subject to serious doubt. On the other hand, appellant was identified by three witnesses as a participant and there was no evidence produced at the trial to challenge their credibility. Under the testimony there was ample evidence from which the jury could find appellant guilty. The fact that the other defendant was found not guilty is no indication of prejudice against appellant. Rather, it is an indication that the jury's verdict was based solely upon the evidence.

Appellant's final contention is without merit.

*Judgment affirmed.*