MARY THERESA PATTERSON *v.* STATE OF
MARYLAND

[No. 496, September Term, 1973.]

*Decided July 11, 1974.*

14

The cause was argued before ORTH, C. J., and MOYLAN and POWERS, JJ.

*William G. Salmond,* with whom was *Gilbert Kramer* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, State's Attorney for Harford County, John A. Goodman* and *Edward Lilly, Assistant State's Attorneys for Harford County,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

On 7 August 1972 the grand jury in Harford County indicted Mary Theresa Patterson, charging that on 25 June 1972 she murdered Douglas Lynn Patterson. Trial was held before a jury in the Circuit Court for Harford County, beginning on 13 February 1973, and ending on 17 February with a verdict of guilty of murder in the second degree. After sentence was imposed, Mrs. Patterson appealed.

In this Court she raises four questions, as follows:

1. Did the Court abuse its discretion by granting the State's Motion for Appropriate Relief and calling Edna Gentile as its own witness during the State's case-in-chief?

2. Did the trial judge abuse his discretion in allowing testimony of two witnesses called by the State as rebuttal witnesses?

3. Did the Court err by insufficiently instructing the jury as to the definition of voluntary manslaughter thus prejudicing the Defendant's right to a fair trial?

4. Did the trial judge commit reversible error by failing to instruct the jury that the prior statements of the witness, Edna Gentile, could be used only for the purpose of impeachment?

Since appellant does not contend that the trial judge erred in denying her motion for judgment of acquittal, a review of all the evidence for sufficiency is not required. Briefly, there was evidence that in the evening of 25 June 1972 the

appellant and her husband, Douglas Lynn Patterson, had planned to go out, and appellant had arranged for her mother, Edna Gentile, to stay with their child. Mr. Patterson decided that he did not want to go out, and said so. An argument ensued. At one time, Mrs. Patterson had a butcher knife in her hand. She was standing near where her husband was sitting in a chair. The husband got up out of the chair and fell to the floor. Blood was coming from his chest. Help was summoned. An ambulance, the police, and a physician arrived. Mr. Patterson was dead, of a knife wound in the chest.

Mrs. Patterson testified in her own defense. She said:

> " * * * we were going to go out for the evening, and right after that, my husband said, no, I am not going. And as soon as he said that, the argument started."

She further said that she went in the kitchen, and was washing dishes. She described what followed:

> "Well, my husband walked into the kitchen and he went to get a drink. He turned around from the kitchen, from where the sink was, it is a double sink, and he started to go like he was going back in to watch TV. So as I was gathering the dishes and the silverware, to finish washing them, because he said we weren't going anywhere, so I turned around and I noticed he was going up to the shelf to get the keys. So I said, 'Where are you going?' And he said, 'I'm going out.' I said, 'Well, you said you weren't going. Why can't we go together?' So he said, — he just started to violently take his hand to the keys. So he went to get it and I was in front of him. I went so fast, up to get the keys out of his hand, not realizing that I had the knife in the other hand, he pushed into me to go out the front door because he wanted to get out, before I knew it, it happened. But I didn't intend to do it. I wouldn't have hurt my husband. He beat me to death but I wouldn't have hurt him."

I

On the morning of trial the State, in a motion for appropriate relief, asked the court to call Edna Gentile as its own witness for the purpose of direct examination by the court and cross examination by both the State and the defense. As reasons, the motion said that the State could not vouch for the veracity of the witness, that her testimony would be material and relevant to the issues and necessary for a full and fair determination of the issues, that later statements made by her vary materially from her first statement to the police, that because of her relationship to the defendant the witness may not be candid in her testimony, and that a miscarriage of justice would result from the failure of the witness to testify.

After taking testimony and hearing arguments on that and other motions, out of the presence of the jury, the court, the following morning, granted the State's motion for appropriate relief.

Before the State closed its case, Mrs. Gentile was called as a court's witness, and was questioned initially by the judge. Thereafter both the State and the defense cross examined the witness.

Appellant contends that it was an abuse of discretion, and therefore error, to call Mrs. Gentile as a court's witness. She does not assert error in any specific question or ruling during the course of Mrs. Gentile's testimony, but contends that by the very act of calling her as the court's witness, the judge diminished and tarnished his role as an impartial moderator, and improperly influenced the jury by creating in their minds suspicion of the appellant's guilt.

> "The authority of a trial judge to call a witness in a criminal prosecution as the court's witness on its own motion or at the request of one of the parties has been recognized in all jurisdictions in which the question has been considered." Annot., 67 A.L.R. 2d 538, 540 (1959).[1]

---

1. The jurisdictions listed in the table as having considered the question are United States, Alabama, Florida, Illinois, Louisiana, Minnesota, Mississippi, North Carolina, Texas, Virginia and West Virginia. Additional jurisdictions listed in A.L.R. 2d Later Case Service (1974) are Arizona, Arkansas, California, New Mexico, Pennsylvania and Tennessee.

The cited Annotation goes on to say, at 541:

"Although the decisions are in accord to this extent, some inconsistencies, if not actual conflicts, appear in regard to when a court may properly exercise such authority; however, the intimation of a majority of the decisions is that it is primarily within the discretion of the court when it shall call a witness for whom neither the prosecution nor the defense is willing to vouch and who appears to possess material evidence."

And says further, at 541-42:

"In some instances the courts have taken the position that the right of a trial judge to call a witness in a criminal case should not be exercised unless material injustice would otherwise result."

In 98 C. J. S. *Witnesses* § 350 (1957) the rule is stated, at 70-71:

"This power of the court to call witnesses and allow cross-examination by either or both sides extends to criminal cases. This does not mean that every witness may be so called, or that cross-examination may include everything that may affect credibility. The calling of a witness as the court's witness in a criminal case, either for or against accused, is a matter resting in the sound discretion of the court. The court's discretion should be exercised with great care; and some showing should be made to the court, in the absence of the jury, to justify the court in calling witnesses as its own. Ordinarily, the court should call a witness as its own only when it is shown that otherwise there might be a miscarriage of justice. The court may call a witness whose veracity and integrity will not be vouched for by the prosecution or accused, or a witness who is hostile to the party calling him."

McCormick, *Law of Evidence*, § 8, states:

"Not only may the judge examine witnesses called by the parties, he may also, for the same purpose of bringing out material facts that might not otherwise be elicited, call witnesses himself whom the parties might not have chosen to call. It is of course a matter of discretion, and is perhaps most often exercised when the prosecution expects that a necessary witness will be hostile and desires to escape the necessity of calling him and being cumbered by the rule against impeaching one's own witness. He may then invoke the court's discretion to call the witness, in which event either party may cross-examine and impeach him."

And in 2 Wharton's *Criminal Evidence*, (13th ed.) § 503 (1972) the author says:

"In its discretion, the court may call a witness who has not been called by the prosecution or the defense, especially if his name is indorsed on the indictment. The court may call as a witness a person who was jointly indicted with the defendant, although not presently on trial; or a person who was originally summoned by the prosecution but proved to be hostile. A person called as a witness by the court is subject to cross-examination by both the prosecution and the defense."

The rule is well stated by the Supreme Court of Illinois in *People v. Moriarity*, 33 Ill. 2d 606, 213 N.E.2d 516 (1966), a case in which convictions in the trial court were reversed because the trial judge "abandoned his role of an impartial arbiter, and assumed the role of prosecutor and jury to an extreme degree." The court said:

"The practice of the court's calling a witness at the request of the prosecution in a criminal case was first enunciated in Carle v. People, 200 Ill. 494, 66 N.E. 32 [1903], where the court approved the calling of an eyewitness to a crime for whose

veracity the State's Attorney could not vouch. It was later stated in People v. Cardinelli, 297 Ill. 116, 130 N.E. 355, that the purpose of the practice was to prevent a miscarriage of justice by having an eyewitness to a crime, for whose veracity neither party will vouch, fail to testify. And while subsequent decisions have held that the practice is not limited to the calling of eyewitnesses, [Citations omitted] every decision which has touched upon the subject has counseled that the practice should be sparingly used and restricted to cases where it is shown there might otherwise be a miscarriage of justice. [Citations omitted] Further, as indicated in People v. Siciliano, 4 Ill. 2d 581, 590, 123 N.E.2d 725, a proper foundation must be laid for the calling of a court's witness, which would necessarily consist of the reasons why the party desiring the witness cannot vouch for his veracity, and showing that the testimony of the witness will relate to direct issues and is necessary to prevent a miscarriage of justice."

No appellate decision in Maryland has ruled whether a trial judge has the authority, in the exercise of his sound discretion, to call and examine witnesses under appropriate circumstances. In *Wilson v. State*, 20 Md. App. 318, 315 A. 2d 788 (1974), a case in which the trial judge called three witnesses for direct examination by the court and cross examination by the State and by the defense, we noted, at 321; n. 1, that the authority of the judge to do so was not at issue in that case, and was well established.[2]

We now hold that in this case it was within the discretion of the trial judge to call Mrs. Gentile as a court's witness, that there was an adequate showing of the need to do so, and that in calling her the court did not abuse its discretion.

2. It is significant that the authority is most frequently exercised because a party declines to vouch for the credibility of the witness. Long standing condemnation of the "voucher" rule should gain impetus from the opinion written by Mr. Justice Powell for the Supreme Court in *Chambers v. Mississippi*, 410 U. S. 284, 93 S. Ct. 1038, 35 L.Ed.2d 297 (1973).

20

## II

In her defense appellant called a State Trooper who testified that in February of 1972 he had gone to the Patterson home in response to a call that "there was a domestic problem", but he recalled no details, except that he talked to both Mrs. and Mr. Patterson. Mrs. Gentile testified that in response to a call from a neighbor, she and Mr. Gentile had gone to the Patterson home on that same occasion. She said the State Troopers had left when they arrived. She said that her daughter was very upset, and said that her husband had beat her up. Mrs. Gentile also said that Mary and Douglas had had other fights.

Mrs. Patterson testified that her husband had beat her many times, and had threatened to kill her.

The State called two rebuttal witnesses; Jeanette Caldwell, Mr. Patterson's sister, and Robert Maxwell Haddox, a co-worker of Mr. Patterson's in the same department at Black and Decker.

No objection was made to the calling of Mrs. Caldwell as a rebuttal witness. Questions to her to which specific objections were made, and on which it is argued here that the trial judge's rulings were in error, involved appropriate rebuttal evidence. The question, "And what did she [Mrs. Patterson] say she was doing at the time?", and the witness's answer, "She told us she was using a knife to prepare supper, as he came home from work, and did not see him coming in.", tended to rebut Mrs. Patterson's testimony that the incident took place after dinner as she was washing the dishes. Mrs. Caldwell's testimony that her brother was very patient, mild-mannered, and even-tempered tended to rebut Mrs. Patterson's testimony that her husband beat her many times, and threatened to kill her.

Appellant did object generally to the calling of Mr. Haddox as a rebuttal witness, because the State's Attorney had said that the witness would testify to the character of the deceased. The objection was overruled.

The evidence elicited from the witness was, in substance, that Mr. Patterson's relations with the people he worked

with were excellent; that he never had any difficulties with his fellow employees; that he was quiet and reserved and never lost his temper; that he was mature for his age, and level-headed; and that the witness did not have any reason to believe he was adulterous, nor had he ever seen him in the company of women at work. All of this evidence appears to us to have been appropriate as tending to rebut evidence put into the case by the defense.

The trial court has a broad discretion in permitting evidence offered in rebuttal. In *Lane v. State*, 226 Md. 81, 172 A. 2d 400 (1961) the Court of Appeals said, at 90:

> "Any competent evidence which explains, or is a direct reply to, or a contradiction of, material evidence introduced by the accused may be produced by the prosecution in rebuttal. *Shanks v. State*, 185 Md. 437, 45 A. 2d 85. And what constitutes rebuttal testimony in a criminal prosecution is a matter resting in the sound discretion of the trial court. *Jones v. State*, 132 Md. 142, 103 A. 459; *Kaefer v. State*, 143 Md. 151, 122 A. 30."

We have applied the same rule in *Jones v. State*, 2 Md. App. 371, 372-73, 234 A. 2d 614 (1967), *Felder v. State*, 6 Md. App. 212, 218, 250 A. 2d 666 (1969), and *Jordan v. State*, 19 Md. App. 283, 286, 310 A. 2d 575 (1973).

There was no abuse of discretion by the trial judge in ruling on the evidence of the State's two rebuttal witnesses.

### III and IV

Appellant's third and fourth contentions in this appeal are that the trial judge erred in his instructions to the jury. The short answer to both is that appellant made no objection to the instructions as given. Maryland Rule 756, §§ f and g are controlling. Section f requires a party to "make such objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the ground of his objection." Section g provides in substance that if an error in

instructions is not raised below as provided in section f it will not be considered on appeal.

We have construed section g with particular reference to our authority to take cognizance of and correct any plain error material to the rights of the accused, though not objected to below, in *Brown v. State*, 14 Md. App. 415, 287 A. 2d 62 (1972), and *Taylor v. State*, 17 Md. App. 41, 299 A. 2d 841 (1973). Under Rule 756 and those cases, appellant's third and fourth contentions are not before this Court for appellate review.

*Judgment affirmed.*
*Appellant to pay costs.*