**PANNO v. UNITED STATES.**

**EVANS BROS. PACKING CO. et al. v. UNITED STATES.**

Nos. 13510; 13511.

United States Court of Appeals
Ninth Circuit.

March 30, 1953.

G. V. Weikert, Los Angeles, Cal., for appellant, Carlo Panno, d/b/a Carlo Panno Fruit Co.

G. V. Weikert, Los Angeles, Cal., and Leonard J. Difani, Riverside, Cal., for appellants Evans Bros. Packing Co., Lloyd A. Evans, Roy E. Evans and Ernest E. Evans.

Charles B. Murray, Asst, Atty. Gen., Walter S. Binns, U. S. Attorney, John T. Grigsby, Los Angeles, Cal., Neil Brooks, Associate Solicitor, U. S. Department of Agriculture, Washington, D. C., for appellee.

Before ORR and POPE, Circuit Judges, and McCORMICK, District Judge.

POPE, Circuit Judge.

The appellants in each of these cases were found guilty under informations charging them with violation of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq. The information charged that the defendants violated the Act by handling oranges without a prorate allotment and without reporting information respecting certain sales, as required by Order No. 66 which had been issued by the Secretary of Agriculture pursuant to the provisions of the Act.

The facts, which were stipulated, were that the "handling" consisted of sales of oranges both produced and sold in California. The Act authorizes the Secretary to issue orders regulating the handling of certain commodities including oranges. Such regulation is to control "only such handling of such agricultural commodity, or product thereof, as is in the current of interstate or foreign commerce, or *which directly burdens, obstructs, or affects interstate or foreign commerce in such commodity or prod-*

*uct thereof."* [1] (Emphasis added.) The Act provides that the Secretary shall give notice and an opportunity to be heard upon such a proposed order and after such notice and hearing, if he finds that the issuance of the order and all of the terms and conditions thereof, will tend to effectuate the policy of the Act, he shall issue an order in conformity with the Act's provisions. Among the appropriate provisions of such an order are those allotting the amount of any such commodity or product which each handler may market in the current of interstate or foreign commerce "or so as directly to burden, obstruct, or affect interstate or foreign commerce in such commodity or product thereof".[2] The Act provides criminal penalties for a handler who violates an order as well as remedies by way of injunction and treble damages. Any handler subject to such an order may file a petition with the Secretary stating that the order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification of the order or for exemption therefrom. He is entitled to a hearing upon that petition and the ruling of the Secretary thereon may be reviewed in an appropriate district court. If a petition for review is filed with the Secretary and prosecuted in good faith, and not for delay, the criminal penalties shall not be imposed for violations between the filing of the petition and the date of notice of the Secretary's ruling.

Order 66, here involved, was adopted pursuant to the provisions of the Act and was subsequently amended as the Act allows. The appellants were charged with violation of the provisions of the amended order which became effective November 1, 1949. This order, as amended, was promulgated after notice and the public hearing prescribed by the Act. It brought within its regulatory program all sales of California and Arizona oranges except the sale of oranges on the tree and the sale of oranges at retail, but including as to such California oranges, sales "within the State of California." [3] The order contained numerous findings as to why this regulation was made to apply to such sales of California and Arizona oranges within those respective States. The general import of these findings was that if sales of oranges interstate were regulated and sales of oranges within the state where produced were not regulated, the prices on the local sales would average lower than those received on interstate shipments; and the continued existence of these surplus, low-

---

1. 7 U.S.C.A. § 608c(1).

2. § 608c(6) (C) describes such a provision as follows: "Allotting, or providing methods for allotting, the amount of any such commodity or product, or any grade, size, or quality thereof, which each handler may market in or transport to any or all markets in the current of interstate or foreign commerce or so as directly to burden, obstruct, or affect interstate or foreign commerce in such commodity or product thereof, under a uniform rule based upon the amounts which each such handler has available for current shipment, or upon the amounts shipped by each such handler in such prior period as the Secretary determines to be representative, or both, to the end that the total quantity of such commodity or product, or any grade, size, or quality thereof, to be marketed in or transported to any or all markets in the current of interstate or foreign commerce or so as directly to burden, obstruct, or affect interstate or foreign commerce in such commodity or product thereof, during any specified period or periods shall be equitably apportioned among all of the handlers thereof."

3. The order provided: "(j) 'Handle' means to buy, sell, consign, transport, ship (except as a common carrier of oranges owned by another person), or in any other way to place oranges in fresh form in the current of commerce between the State of California and any point outside thereof in the continental United States, Alaska, or Canada, *or within the State of California,* or between the State of Arizona and any point outside thereof in the continental United States, Alaska, or Canada, or within the State of Arizona. The term 'handle' does not include (1) the sale of oranges on the tree, (2) the transportation of oranges to a packing house for the purpose of having such oranges prepared for market, or (3) the sale of oranges at retail by a person in his capacity as such retailer." *(Emphasis added.)*

er-priced oranges grown within the State and free from regulation therein would affect and depress the price returns upon oranges marketed in interstate channels, because of the disposition of purchasers to anticipate eventually being able to procure a portion of that surplus at reduced prices. It was found that the existence of a substantial quantity of unregulated oranges produced and sold in intrastate fresh fruit channels created "a psychological sales inertia in interstate fresh fruit channels"; that this directly "burdens, obstructs and affects interstate and foreign commerce in oranges." The Secretary found that the regulation of the handling of all oranges grown in either of said states and wherever sold would result in more orderly marketing in both local and interstate markets, and that the result could be obtained through restriction on a uniform basis for both types of markets. It was concluded that the handling of all of such oranges should be subject to regulation. Accordingly, the order provided (§ 966.10): "Except as provided herein, no person shall handle oranges during any week in which a regulation issued by the Secretary pursuant to § 966.6 is in effect, unless such person has an allotment, or unless such person is otherwise permitted to handle such oranges under the provisions hereof; and no person shall handle oranges except in conformity with the provisions hereof and the regulations issued hereunder."

The stipulations upon which these cases were tried disclosed that the appellants were handlers of oranges within the meaning of this regulation and that they made sales without the prorate allotments required by Order 66. While it thus appears that the sales of oranges made by the appellants came squarely within the prohibitory terms of the order, appellants contend that they cannot be found guilty of a violation of the Act in the absence of proof by the Government that the particular sales specified in the information did themselves directly burden, obstruct or affect interstate or foreign commerce in such oranges. As put by the appellants their argument is: "That brings us right back to the appellants' position, namely, that the appellee,

having alleged that certain intrastate sales of California grown oranges made by appellants were in violation of Order No. 66, as amended, and therefore criminal, must prove, by competent evidence, beyond a reasonable doubt, that *those sales* did *directly* burden, obstruct, or affect interstate or foreign commerce in such oranges; otherwise, *those sales* were not subject to the Order; and that the blanket finding of the Secretary made when he amended the Order on June 29, 1949, is not competent evidence to prove that the intrastate sales in 1951 involved in these cases *directly* burdened, obstructed, or affected interstate or foreign commerce." (Emphasis of "those sales" is ours.)

Appellants expressly disclaim questioning the validity of Order No. 66 insofar as it regulates "such intrastate commerce in such oranges as *directly* burdens, obstructs, or affects interstate or foreign commerce therein." Such a concession appellants must necessarily make for of course it was within the power of Congress to extend the regulatory scheme to intrastate commerce in oranges "which directly burdens, obstructs, or affects, interstate or foreign commerce in such commodity". United States v. Wrightwood Dairy Co., 315 U.S. 110, 121, 62 S.Ct. 523, 524, 86 L. Ed. 726; Wallace v. Hudson-Duncan & Co., 9 Cir., 98 F.2d 985, 993. The Secretary, in promulgating the amended order, conformed in all respects to the procedural requirements of the Act, and his findings, predicated upon evidence to the effect that the local sales of oranges do affect interstate or foreign commerce in that commodity, clearly make sense; they are not, as such, questioned here.

We are therefore at a considerable loss to understand why the appellants conceive that after the Government has proven that they have made sales which are prohibited by the express terms of the order, it must go further and prove "by competent evidence, beyond a reasonable doubt", that those particular sales did directly burden, obstruct or affect interstate or foreign commerce in oranges.

508

■■ Because of the technical difficulties of the subject, Congress has chosen to delegate to the Secretary of Agriculture the task of completing the legislative regulatory scheme here set up. Had Congress chosen to do so it might itself have made the same findings which the Secretary here made and have enacted the provision for allotments in respect to all sales of California oranges both interstate and intrastate. Such an enactment would have been within the power of Congress because supported by the unquestioned facts relating to the effect of unregulated intrastate sales upon interstate sales. Such an enactment would be valid notwithstanding it could be demonstrated that in exceptional instances or special cases particular sales of oranges within the state might be made without any demonstrable effect upon interstate commerce. It seems to us to be manifest that had Congress chosen to promulgate a complicated regulation of this kind without bothering to delegate any part of the legislative process to the Secretary, the appellants would be in no position to require proof that the reasons for the congressional enactment applied with full force to their particular acts.[4] The appellants are in no different situation here, where the Secretary's order, in legal effect, expresses the Congressional will as fully as if Congress itself had incorporated it into the Act.

■ For an additional reason the position taken by the appellants is untenable. As we have indicated the Act makes full provision granting any handler in the position of these appellants an administrative remedy in case of any improper application to him of the Secretary's order.[5] In La Verne Co-op. Citrus Ass'n v. United States, 9 Cir., 143 F.2d 415, 418, a case in which the Government was enforcing by injunction the provisions of the same Act which we here consider, this Court held that the section of the Act setting up an administrative remedy, together with the other provisions of the Act "are consistent only with a construction that the methods outlined in the Act for determining the validity of orders is exclusive." Thereafter, in United States v. Ruzicka, 329 U.S. 287, 292, 67 S.Ct. 207, 210, 91 L.Ed. 290, an action to enforce certain other provisions of the same act, the Supreme Court said the same thing. It proceeded at considerable length to explain how disruptive it would be to allow issues that may be canvassed first before the Secretary and second upon a review by the District Court, to be tried later in enforcement proceedings. All of the reasons there given for construing the administrative remedy to be the exclusive one apply with even more force here. If the problem of whether intrastate sales of California oranges affect, burden or obstruct interstate sales of oranges involves what the Supreme Court in the Ruzicka case called "questions of law arising out of, or entwined with, factors that call for understanding of the * * * industry", it would frustrate all of the objectives of the Act if recalcitrant handlers could compel the government to can-

4. For example, if a legislative enactment requires all milk sold at retail to be pasteurized, a single producer may not escape the impact of the law by showing that his particular milk is handled with such care that the possibility of contamination which may justify the enactment generally has no application to his product and hence that his sales cannot violate the statute.

5. The provision is as follows: Title 7 U.S.C.A. § 608c(15). "(A) Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obliga-

tion imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law. (B) The District Courts of the United States in any district in which such handler is an inhabitant, or has his principal place of business, are vested with jurisdiction in equity to review such ruling, * * *."

vass such questions in respect to every sale in a prosecution such as we have here.

Appellants argue that since they do not question and have not questioned the validity of Order No. 66 insofar as it regulates generally such intrastate commerce in oranges as directly burdens, obstructs, or affects interstate commerce, that they were not called upon to employ the administrative remedy. The argument is untenable in any event but it is peculiarly inapposite in view of the express phraseology of the Section providing for the administrative remedy which permits the handler subject to such an order to petition the Secretary "to be exempted therefrom".

■ The stipulated facts were therefore amply sufficient to sustain the convictions for handling oranges without prorate allotments, first because of the presumption of regularity which attaches to the official acts of the Secretary, Pasadena Research Laboratories v. United States, 9 Cir., 169 F.2d 375, 381, and second, because appellants' failure to avail themselves of the administrative remedy precludes them from urging the points here presented. Persons so precluded, who have violated administrative orders, are subject to criminal sanctions. Yakus v. United States, 321 U.S. 414, 427, 64 S.Ct. 660, 88 L.Ed. 834; cf. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567.

In the Evans case, No. 13511, the court rendered separate judgments against Evans Brothers Packing Company, the partnership, and each of the three named partners. The partnership was adjudged guilty on all counts and in like manner each partner was adjudged guilty on all counts. The partnership was ordered to pay a fine of $50 on each of counts 1 to 15 inclusive and like judgment was rendered against each partner. The appellants assert that error was committed in thus imposing duplicate fines on the partnership and on each of the partners.

Since the fines imposed were in the minimum amount provided by the Act (§ 608c (14) provides for fines not less than $50 or more than $500 for each violation), it might be an interesting question whether appellants' claim in this connection is substantially no more than a complaint as to the form of the judgment. As we understand appellants' position upon this point, they could not find fault with a fine of $200 upon each of these 15 counts had it been imposed upon the partnership alone. The action of the judge discloses that in his opinion fines aggregating that amount should be paid on account of each of these 15 counts, and it is difficult to observe, so far as the amount of the fines is concerned, how the individual appellants are prejudiced by the form which the action of the court took.

■ But apart from that matter, and assuming that the appellants are in a position to urge the point, the Act, § 608c(14), provides for imposition of the penalty upon "Any handler subject to an order issued under this section, or any officer, director, agent, or employee of such handler, who violates any provision of such order * * *." A key provision of the Act is found in § 608c(1) as follows: "The Secretary of Agriculture shall, subject to the provisions of this section, issue, and from time to time amend, orders applicable to processors, associations of producers, and others engaged in the handling of any agricultural commodity or product thereof specified in subsection (2) of this section. Such persons are referred to in sections 601–608, 608a, 608b, 608c, 608d–612, 613, 614–619, 620, 623, and 624 of this title as 'handlers.'" In § 608a(9) the term "person" so used is defined to include "an individual, partnership, corporation, association, and any other business unit". We think that a fair construction of the Act would make the partnership as a business unit a "handler". But nonetheless, each of these partners was, we think, likewise a handler within the meaning of the Act. This manner of imposing separate fines was appropriate and proper. Cf. Levin v. United States, 9 Cir., 5 F.2d 598; United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48; 18 U.S.C.A. § 2.

■ In the case of each individual defendant the judgment provided, following the imposition of the fine, that "in default

of which he will stand committed to the custody of the Attorney General until such fine is paid or he is otherwise discharged by due course of law". Contention is made that the court was without power to order the individual appellants committed until the fines were paid. The action of the trial court is authorized by Title 18 U.S.C.A. § 3565. Cf. Hill v. United States ex rel. Wampler, 298 U.S. 460, 463, 56 S.Ct. 760, 80 L.Ed. 1283 (dealing with R.S. § 1041, from which this section was taken), and Boyd v. Archer, 9 Cir., 42 F.2d 43, 70 A. L.R. 1507.

■ In the Evans case, the court, adjudging each defendant guilty upon all 25 counts, imposed fines as above stated on each of the first 15 counts. Imposition of sentence was suspended on counts 16 to 25, both inclusive, and each defendant was placed on probation for a period of six months. These defendants assign error in that part of the judgment which placed them on probation, asserting that the error lies in the failure of the court to specify any terms of probation. This contention is without merit and these appellants are in no position to complain of the failure of the court to add further conditions to the probation.

Appellants' final point relates to their conviction upon certain counts which charge them with failing to make reports to the Orange Administrative Committee giving information as to the variety and size of certain oranges sold, as required by Order No. 66. In the Panno case, the first 20 counts, and in the Evans case, the first 23 counts, allege violation in making certain specified sales "without the prorate allotment required under the provisions of Order No. 66". The sufficiency of the proof as to these we have heretofore discussed and considered. The stipulation shows these violations. But the last five counts in the Panno case, and counts 24 and 25 in the Evans case, merely relate to the failure to report information. Appellees say that on such counts there was no evidence whatever to warrant a conviction.

■ We are of the opinion that this point is well taken, for the stipulation which alone constituted the evidentiary basis for the court's judgment contains nothing relative to a failure to report information.

Accordingly, both cases are remanded to the district court with directions to modify the judgments by eliminating therefrom adjudications of guilt in respect to counts 21 to 25 inclusive in No. 13510, and counts 24 and 25 in No. 13511. As so amended, the judgments in both cases are affirmed.