Herbert **KELLY**, Willie Lee Lloyd, Charles Lynwood Mitchell, Calvin Jacobs, Reginald Johnson and Marvin Jordan

v.

Hiram **SCHOONFIELD**, Warden, Baltimore City Jail.

Civ. No. 19482.

United States District Court
D. Maryland.

May 28, 1968.

Robert G. Fisher, Elsbeth Levy Bothe, William H. Zinman and Stuart H. Rome, Baltimore, Md., for plaintiffs.

George L. Russell, Jr., City Sol., James B. Murphy and Roger C. Duncan, Asst. City Sols., of Baltimore, Md., for defendant Warden.

Francis B. Burch, Atty. Gen. of Maryland, Thomas A. Garland and Morton A. Sacks, Asst. Attys. Gen., Baltimore, Md., for State of Maryland, intervening defendant.

Before WINTER, Circuit Judge, THOMSEN and HARVEY, District Judges.

THOMSEN, District Judge.

Plaintiffs in this action brought under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 were convicted on various dates between April 8 and April 10, 1968, in the Municipal Court of Baltimore City, of violating Chapter 70 of the Acts of 1968, which became effective April 5, 1968, and is now codified as Article 41, section 15b of the Annotated Code of Maryland. Inter alia, that statute granted to the Governor power under certain conditions to declare a state of emergency in specified areas and to promulgate executive orders, including the power to establish curfews. The statute further provided:

"(f) Penalties. Any violation of the provisions of this subtitle or any orders, rules or regulations promulgated hereunder shall be punishable as a misdemeanor and shall subject the offender to a fine of not more than one hundred dollars ($100.00) or not more than sixty (60) days incarceration, or both, upon conviction thereof."

During the riots which occurred in Baltimore in early April of this year, the Governor promulgated curfews on several days, and each plaintiff was found guilty of having violated such a curfew. Four of the plaintiffs were sentenced to pay fines of $50 and $4 court costs. Two of them were sentenced to pay fines of $100 and $4 court costs.

Article 38 of the Annotated Code of Maryland deals with Fines and Forfeitures. Sections 1 and 4 of that Article provide in pertinent part:

" § 1. Mode of recovering; exception as to Baltimore City.

"When any fine or penalty is imposed by any act of Assembly of this State or by any ordinance of any incorporated city or town in this State enacted in pursuance of sufficient authority, for the doing of any act forbidden to be done by such act of Assembly or ordinance, or for omitting to do any act required to be done by such act or Assembly or ordinance, the doing of such act or the omission to do such act shall be deemed to be a criminal offense; * * * If any person shall be adjudged guilty of any such offense by any court having jurisdiction in the premises, he shall be sentenced to the fine or penalty prescribed by such act of Assembly or ordinance and to the costs of his prosecution; and in default of payment thereof he shall be committed to jail until thence discharged by due course of law. * *."

"§ 4. Confinement for nonpayment.

"Any person who shall or may hereafter be committed to jail on any charge, including contempt of court, by the judgment of any court or by any justice of the peace of this State, for nonpayment of any fine and costs, shall be confined one day for each dollar of fine and costs but in no event shall be confined more than thirty days for fine and costs amounting to one hundred dollars, nor more than sixty days for fine and costs exceeding one hundred dollars but not more than five hundred dollars nor more than ninety days for fine and costs exceeding five hundred dollars. All periods of confinement imposed under the provisions of this section because of nonpayment of two or more fines and costs shall run concurrently unless it shall be specified by the court or justice of the peace that said periods shall run consecutively."

Pursuant to section 4, quoted above, the four plaintiffs who were fined $50 and costs were confined in the Baltimore City Jail for 30 days, being released at or about the time this action was filed. Of the other two, who were fined $100 and costs; one has paid his fine and costs and been released; the other is still in the Baltimore City Jail.

■ On their own behalf, and on behalf of others similarly situated,[1] plaintiffs allege that they are indigent and therefor unable to pay their fines, and seek: (A) a declaratory judgment that Article 38, sections 1 and 4, quoted above, violate the Constitution of the United States when those sections are applied to effect the confinement of plaintiffs and all others similarly situated "solely as the result of their indigency and inability to pay fines"; (B) an order enjoining the defendant Warden from confining plaintiffs, and others similarly situated, pursuant to those sections; and (C) other relief. The prayer for other relief is not before this statutory three-judge court, which was convened because of the attack on the validity of a state-wide statute as applied to indigent persons as a class. Chester v. Kinnamon, 276 F.Supp. 717 (D.Md.1967). At the same time they filed this action some of these plaintiffs filed a petition for a writ of habeas corpus, which was denied by Judge Harvey on May 16, 1968, Mitchell et al. v. Schoonfield, 285 F.Supp. 728 (D.Md.).

The State of Maryland was given leave to intervene in the instant case as a party defendant, and the defendants filed a motion to dismiss. The parties have agreed that the validity of the statute as applied to plaintiffs and others similarly situated is the only question to be decided by this three-judge court. Defendants raise no question about plaintiffs' right to maintain a class action for this specific purpose. Defendants do not deny the indigency of the plaintiffs, but deny vehemently the many sweeping allegations in the complaint attacking on due process grounds the trials of thousands of persons arrested during the riots.

Plaintiffs' claim that Article 38, sections 1 and 4, when applied to indigents,

deny them equal protection of the laws, and that a fine in excess of the ability of a defendant to pay, with imprisonment for nonpayment, violates the Eighth Amendment proscription against excessive fines and amounts to cruel and unusual punishment. A narrower issue is whether the sections in question violate the equal protection requirement because they include the amount of the costs as well as of the fine in determining the length of time which must be served under the provisions of section 4. The plaintiff still in jail would have been released after 30 days if the fine alone had been determinative; it was the addition of the $4 costs to the $100 fine which increased the time to 60 days.

■ There is no merit in the Eighth Amendment point. The trial courts could have imposed sentences of 60 days, and plaintiffs are not being required to serve any longer period than that.[2] See United States ex rel. Privitera v. Kross, 239 F. Supp. 118 (S.D.N.Y.1965), aff'd, 345 F. 2d 533 (2 Cir. 1965), cert. denied, 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163 (1965); Cohen v. State, 173 Md. 216, 232, 195 A. 532, 196 A. 819 (1937). The cases of Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), and Driver v. Hinnant, 356 F.2d 761 (4 Cir. 1966), relied on by plaintiffs, are clearly distinguishable. Robinson was convicted of being a drug addict and Driver was convicted of public drunkenness, both resulting from disease. In the present case, however, each plaintiff had committed what is indisputably a crime.

■ Nor do we find that the statute violates the Equal Protection Clause of the Fourteenth Amendment simply because it requires the commitment of an indigent, like any other person, who is in default of payment of a fine.

---

1. Counsel for plaintiffs estimate that some 50 persons out of the many persons who were fined for curfew violations are still in the jail, presumably because they have been unable to pay their fines and costs.

2. The question is not before us whether it is constitutionally permissible to re-

quire a person to serve any time in default of payment of a fine after he has served the maximum period of imprisonment authorized by the statute under which he was convicted. See Ex parte Garrison, 297 F. 509 (S.D.Cal.1924); Henderson v. United States, 189 A.2d 132 (D.C.App.1963).

Counsel agree that the practice of jailing a convicted defendant for nonpayment of a fine is of long standing, in England, in most states, including Maryland, and in the federal system. Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877 (1877); Hill v. United States ex rel. Wampler, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283 (1936); United States v. Wampler, 10 F.Supp. 609 (D.Md.1935, Chesnut, J.); Panno v. United States, 203 F.2d 504 (9 Cir. 1953); Dean v. State, 98 Md. 80, 56 A. 481 (1903); 18 U.S.C. §§ 3565, 3569. Committing the defendant to jail is no part of the punishment; the penalty or the punishment adjudged is the fine, and the custody adjudged is the mode of executing the sentence. 21 Am.Jur.2d (Criminal Law § 603) p. 557. It has been generally held that commitment under such circumstances is not an unconstitutional imprisonment for debt, and that it does not violate any other constitutional provision, although doubt has been expressed where it results in a total imprisonment longer than the maximum imprisonment which could have been imposed for the offense.

The question whether a different result should be reached when the default in the payment of the fine is the result of indigency rather than stubbornness has seldom been raised, although it cannot be doubted that most persons who have defaulted in the payment of fines have done so because they were unable rather than unwilling to pay. The question was decided adversely to plaintiffs in United States ex rel. Privitera v. Kross, 239 F.Supp. 118, supra, (S.D.N.Y.1965), aff'd 345 F.2d 533 (2 Cir. 1965), cert. denied, 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163 (1965).[3] Chief Judge Foster of the Supreme Bench of Baltimore City so held in denying habeas corpus relief to these plaintiffs in their prior State court proceeding in April 1968. Cf. People v. McMillan, 53 Misc.2d 685, 279 N.Y.S.2d 941 (Sup.Ct. Orange County 1967). And

see People v. Saffore, 18 N.Y.2d 101, 271 N.Y.S.2d 972, 218 N.E.2d 686, where the Court concluded: "We do not hold illegal every judgment which condemns a defendant to confinement if he does not pay his fine. We do hold that, when payment of a fine is impossible and known by the court to be impossible, imprisonment to work out the fine, if it results in a total imprisonment of more than a year for a misdemeanor, is unauthorized by the Code of Criminal Procedure and violates the defendant's right to equal protection of the law, and the constitutional ban against excessive fines". 18 N.Y.2d at 104, 271 N.Y.S.2d at 975, 218 N.E.2d at 688.

■■■■ What was said in the *Privitera* opinion applies to each of the plaintiffs in this case. "The sentence was not imposed upon petitioner because he was indigent; it was visited upon him because he had committed a crime. And once convicted, petitioner has no constitutional right that another defendant, no matter what his economic status, rich or poor, receive the same sentence for the same offense." 239 F.Supp. at 120. Not every discrimination is invalid. As the Supreme Court said in Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed. 2d 577 (1966): "The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. McLaughlin v. State of Florida, 379 U.S. 184, 189–190, 85 S. Ct. 283, 286–287, 13 L.Ed.2d 222. It also imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. 'The Constitution does not require things which are different in fact * * * to be treated in law as though they were the same.' Tigner v. State of Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L. Ed. 1124. Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But

3. See also Cohen v. State, 173 Md. 216, 218, 195 A. 532, 196 A. 819 (1937); Ex parte Garrison, 297 F. 509 (S.D.Cal.

1924); Henderson v. United States, 189 A.2d 132 (D.C.App.1963).

the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.' Baxstrom v. Herold, 383 U.S. 107, 111, 86 S. Ct. 760, 15 L.Ed.2d 620; Carrington v. Rash, 380 U.S. 89, 93, 85 S.Ct. 775, 778, 13 L.Ed.2d 675; Louisville Gas [& Electric] Co. v. Coleman, 277 U.S. 32, 37, 48 S.Ct. 423, 425, 72 L.Ed. 770; [F. S.] Royster Guano Co. v. Commonwealth of Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989." 384 U.S. at 308, 309, 86 S.Ct. at 1499, 1500.

 The commitment of convicted defendants who default in the payment of their fines, whether from inability or unwillingness to pay, imposes a burden upon a defined class to achieve a permissible end in which the State has a vital interest; i. e., that persons who are found guilty of breaking the laws shall receive some appropriate punishment, to impress on the offender the importance of observing the law, in the hope of reforming him, and to deter the offender and other potential offenders from committing such offenses in the future. This Court does not say that Article 38, section 4, even as amended in 1968,[4] is the best way of accomplishing the desired results; we welcome the studies being conducted by a Maryland Commission and by other groups throughout the country to discover better ways. See, e. g., Model Penal Code, Proposed Official Draft (ALI 1962). But Article 38, section 4 is a constitutionally permissible way of accomplishing the desired results; the class established thereby and the distinction drawn therein have "some relevance to the purpose for which the classification is made", and are not illegally discriminatory.

The addition of costs to the amount of the fine in determining the length of time to be served presents a more difficult question. The costs are not made a part of the fine or other penalty by the statute which was violated, Ch. 70 of the Acts of 1968, Art. 41, sec. 15b, quoted above, and are seldom made a part of the penalty in other Maryland criminal statutes. The Court is advised and the parties agree that in Baltimore City and the adjacent counties, when a court[5] imposes a jail sentence, whether for a given number of days or a given number of months, it is the practice not to include costs in the commitment; hence, in such cases, no time is served for nonpayment of costs. When a fine is imposed, the costs are usually specified in the commitment and are included in computing the time to be served in default of payment.

No justification for this distinction has been presented and none is apparent to the Court.

 Indeed, the requirement that any time be served in default of the payment of costs, when not applied to all persons sentenced, whether to pay a fine or to be imprisoned or both, runs afoul of the recent decision of the Supreme Court in Rinaldi v. Yaeger, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966), which held that a New Jersey statute, requiring an unsuccessful appellant to repay the cost of a transcript used in preparing his appeal, which applied only to one who was incarcerated and not to others, constituted an invidious discrimination in violation of the Equal Protection Clause.

 It follows that under the circumstances of this case the State cannot constitutionally include costs in computing the time to be served under Article 38, section 4. A declaratory judgment to that effect will be entered. We do not intimate that the provisions of section 4 are not enforceable in a proper case.

---

4. To decrease the period which must be served from one day for each dollar of the fine and costs to one day for each two dollars of the fine and costs. Ch. 367 of the Acts of 1968, effective July 1, 1968.

5. The Criminal Court of Baltimore and the Circuit Courts in the Counties, the Municipal Court of Baltimore City, the Peoples Court of Anne Arundel County and the Trial Magistrates in Baltimore County.

The defendant Warden should release promptly any of the plaintiffs who are still in jail and all other persons similarly situated. An injunction requiring such release will be issued.

The writer of this opinion as a single judge will dismiss as moot the other requests for relief contained in the complaint, without intimating that this Court could properly grant any of them on this complaint or at this time.