**Phillip MORRIS, Diego Cordova Cesario (also known as Diego Cordova), Joseph J. Dingle, Calvin Scott Coles, Charles Thomas, Dale K. Quinby, Plaintiffs,**

and

**Wilbur Gray, Intervening Plaintiff,**

v.

**Hiram SCHOONFIELD, Warden, Baltimore City Jail, and State of Maryland.**

**Civ. No. 19703.**

United States District Court
D. Maryland.

June 19, 1969.

Robert J. Fisher, Elsbeth Levy Bothe, Stuart H. Rome and William H. Zinman, Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen. of Maryland, and Alfred J. O'Ferrall, III, Asst. Atty. Gen., for the State of Maryland.

George L. Russell, Jr., City Sol. of Baltimore City, and Roger C. Duncan, Asst. City Sol., for the Warden, Baltimore City Jail.

Before WINTER, Circuit Judge, and THOMSEN and HARVEY, District Judges.

THOMSEN, District Judge.

This is the second case filed in this Court attacking the constitutionality of Article 38, sections 1 and 4 of the Maryland Code, which provide for commit-

ment to jail for nonpayment of fines and costs.

Article 38 deals with Fines and Forfeitures. Sections 1 and 4 provide in pertinent part:

"§ 1. Mode of recovering; * * *

"When any fine or penalty is imposed by any act of Assembly of this State or by any ordinance of any incorporated city or town in this State enacted in pursuance of sufficient authority, for the doing of any act forbidden to be done by such act of Assembly or ordinance, or for omitting to do any act required to be done by such act of Assembly or ordinance, the doing of such act or the omission to do such act shall be deemed to be a criminal offense; * * * If any person shall be adjudged guilty of any such offense by any court having jurisdiction in the premises, he shall be sentenced to the fine or penalty prescribed by such act of Assembly or ordinance and to the costs of his prosecution; and in default of payment thereof he shall be committed to jail until thence discharged by due course of law. * * * *"

"§ 4. Confinement for nonpayment.

"Any person who shall or may hereafter be committed to jail on any charge, including contempt of court, by the judgment of any court or by any justice of the peace of this State, for nonpayment of any fine and costs, shall be confined one day for every two dollars of fine and costs but in no event shall be confined more than thirty days for fine and costs amounting to one hundred dollars, nor more than sixty days for fine and costs exceeding one hundred dollars but not more than five hundred dollars nor more than ninety days for fine and costs exceeding five hundred dollars. All periods of confinement imposed under the provisions of this section because of nonpayment of two or more fines and costs shall run concurrently unless it shall be specified by the court or justice of the peace that said periods shall run consecutively."

Section 4 was amended, effective July 1, 1968, to read as set out above. Previously the ratio of days in jail to dollars of unpaid fine and costs had been one day of confinement for each dollar of fine and costs.

The previous action was brought by several persons who had been convicted of violating the curfew imposed during the riots in Baltimore in April 1968, on behalf of themselves and of others similarly situtated. They alleged, and the State admitted, that they were indigent and therefore unable to pay their fines. A three-judge court, composed of the same judges who compose the court in this case, held that commitment to jail for nonpayment of fines did not violate plaintiffs' constitutional rights, but that in view of the divergent practices admittedly then existing, the State could not constitutionally include costs in computing the time to be served under Article 38, section 4. Kelly v. Schoonfield, 285 F.Supp. 732, decided May 28, 1968.

The present action was filed on July 12, 1968, by six persons who had been convicted of various offenses by the Municipal Court of Baltimore City, and were confined in the Baltimore City Jail for nonpayment of fines and costs. Three of the plaintiffs (Cesario, Thomas and Quinby) completed their sentences shortly after this action was filed. The other three (Morris, Coles and Dingle) have been released on bail by a judge of the Supreme Bench of Baltimore City pending the decision of this case. The intervenor, Gray, was released by this Court on his own recognizance.

Plaintiffs are suing on their own behalf and on behalf of all other indigent persons detained by the Warden of the Baltimore City Jail under Article 38, sections 1 and 4, for nonpayment of fines and/or costs. They claim that those sections are unconstitutional as applied to indigents because they violate the "excessive fines" and "cruel and unusual punishment" provisions of the Eighth Amendment, the "due process" and "equal protection" clauses of the Fourteenth Amendment, and the "involuntary

servitude" provision of the Thirteenth Amendment to the Constitution of the United States.

Defendants [1] filed a motion to dismiss on various grounds, which was denied by this Court on February 12, 1969, following a hearing. At the same time, this Court held that under the stipulated facts the State cannot constitutionally include costs in computing the time to be served under Article 38, section 4, and enjoined the respondent Warden of the Baltimore City Jail from detaining any person in jail on account of nonpayment of any court costs theretofore or thereafter imposed. The majority of this Court, however, desired additional facts before deciding the other questions raised. An additional stipulation has been filed, testimony has been taken and exhibits received.

## I. Costs

We adhere to the views expressed in our opinion filed on January 29, 1969, with respect to costs.[2]

■ This Court, therefore, declares that under the stipulated facts in this case the State cannot constitutionally include costs in computing the time to be served under Article 38, section 4. As noted above, this Court issued an injunction to that effect on February 12, 1969. This decision makes it unnecessary to decide whether commitment for nonpayment of costs also violates the due process clause.

## II. Fines

■ Plaintiffs' first contention is that the provisions of Article 38, sections 1 and 4 are unconstitutional on their face because they establish a fixed correlation between the amount of the fine and the number of days to be served in default of payment of the fine, which is applied in cases where defendants are unable to pay as well as in cases where they are unwilling. Plaintiffs also contend that the ratio of one day's confinement for each $2.00 of the fine is unreasonable. Of course, a statute providing a fixed correlation may be challenged on its face, or because of the manner in which it is applied by courts generally, or because of the manner in which it is applied in a particular case.

1. The Warden of the Baltimore City Jail and the State of Maryland, which intervened in the previous case because of its interest, and has not objected to being made a party defendant in this case.

2. At the time of the hearing in this case on May 1, 1969, the following facts were stipulated as the then current practice, despite the decision of this Court in Kelly v. Schoonfield, 285 F.Supp. 732 (1968):

    (a) In the case of persons sentenced to one year or more and costs in the Municipal Court of Baltimore City, a detainer was lodged with the prison authorities so that such person could be transferred to jail at the close of his prison sentence to serve time for costs.

    (b) In the People's Court of Prince George's County, the People's Court of Montgomery County, the People's Court of Howard County and the Baltimore County Magistrates' Courts costs were waived in accordance with Kelly.

    (c) In the People's Court of Anne Arundel County in the case of an indigent on commitment for fine and costs, the Court directed that said indigent was not to serve time for the costs assessed but noted that in the instance where such a defendant, after serving some time, attempted to pay the remainder of his fine, he must then pay the costs.

    (d) Generally, on the Circuit Court level in Prince George's County, Baltimore City, Anne Arundel County and Howard County, an indigent was required to serve time for fine and costs.

This Court is advised that at the meeting of the Maryland Judicial Conference held in Baltimore on January 15, 16 and 17, 1969, the following resolution was adopted, and a copy thereof sent to all members of the Conference on January 22, 1969:

    "Be it resolved that the judges of the trial courts of general jurisdiction in this State will not hereafter impose court costs in a case where an indigent defendant shall have been convicted and sentenced to pay a fine or to be imprisoned, unless the sentence be suspended and the defendant placed on probation, in which event, the imposition of court costs may be made a condition for the granting of probation."

The statutes of the several states vary greatly in their provisions. Some have a fixed correlation, running from one day for each $.25 [3] of the fine to one day for each $10.00 [4] of the fine. Most have limitations on the total time which may be required to be served, generally similar to the limitations in section 4 of the Maryland statute under consideration, but varying from state to state.

The statutes of some of the states require the judge to fix in each case the ratio between the amount of the fine and the time to be served for nonpayment.[5] See, e. g., the New York statute held constitutional in United States ex rel. Privitera v. Kross, 239 F.Supp. 118 (S.D.N.Y.), aff'd 345 F.2d 533 (2 Cir.), cert. den., 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163 (1965), and the New York statute now in effect.[6] Other statutes, e. g., the Federal statute, 18 U.S.C.A. § 3569, require that a defendant be released after a certain period upon his filing an affidavit that he is unable to pay the fine. Some states, like Maryland,[7] have statutes allowing a judge to permit the fine to be paid in installments.

■ The Court held in *Kelly* that the confinement of indigents, as well as others, for a limited period because of non-payment of fines does not deny them the equal protection of the laws and does not constitute, in the abstract, cruel and unusual punishment. Unanimously, we concluded: "The commitment of convicted defendants who default in the payment of their fines, whether from inability or unwillingness to pay, imposes a burden upon a defined class to achieve a permissible end in which the State has a vital interest; i. e., that persons who are found guilty of breaking the laws shall receive some appropriate punishment, to impress on the offender the importance of observing the law, in the hope of reforming him, and to deter the offender and other potential offenders from committing such offenses in the future. * * * Article 38, section 4 is a constitutionally permissible way of accomplishing the desired results; the class established thereby and the distinction drawn therein have 'some relevance to the purpose for which the classification is made', and are not illegally discriminatory." 285 F.Supp. at 737. The majority of the Court adheres to those views for the reasons stated in *Kelly*.[8]

■ Even with the limitations fixed by the Maryland statutes on the period for which a defendant may be held,[9] a ratio of one day to each $2.00 of fine seems to set a very low number of dol-

---

3. See Va.Code Ann. §§ 53–221 (1950).

4. See Wash.Rev.Code Ann. § 10.82.020 (Supp.1968).

5. It should be noted that there are a number of Maryland statutes dealing with specific crimes, which apparently permit a judge to establish specific periods of confinement when dealing with persons convicted of those crimes, but the evidence does not show whether those statutes are ever used. See Art. 27, sections 122, 124, 183, 189, 213, 275, 320 and 406.

6. N.Y.Code of Crim.Proc., section 470–d (1967).

7. See Article 26, section 113(c); Article 27, section 139; Article 52, section 18.

8. We have been referred to no case which has held a fixed ratio schedule unconstitutional on its face.

9. The effective ratios set up by the Maryland statute, Art. 38, secs. 1 and 4, in view of the limitations contained therein, are as follows:

| Fine | Limit | Effective Ratio |
|---|---|---|
| $1–$60 | | 1 day for each $2 |
| $61–$100 | 30 days | 1 day for each $2.03 to 1 day for each $3.33 |
| $101–$120 | | 1 day for each $2 |
| $121–$500 | 60 days | 1 day for each $2.02 to 1 day for each $8.33 |
| $500–over | 90 days | 1 day for each $5.55 and up |

lars for each day to be served. Although we would prefer a different statute,[10] we are not convinced that the statute in its present form is unconstitutional on its face. See Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903 (1947) (compare concurring opinion of Frankfurter, J., and dissenting opinion of Black, J.); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (compare conflicting opinions of Douglas, Harlan, Goldberg and Black, JJ.); Kelly v. Schoonfield, supra.

█ The ratio suggests that Article 38, sections 1 and 4 have a dual purpose: (1) to provide a substitute punishment for the crime and (2) to coerce recalcitrants who are able to pay their fines but who refuse to do so. The use of compulsion to pay a fine in the case of a non-indigent defendant is constitutionally permissible, but the imposition of such compulsion on an indigent defendant might well violate the equal protection clause of the Fourteenth Amendment. Rinaldi v. Yeager, 384 U.S. 305, 308, 86 S.Ct. 1497, 16 L.Ed.2d 577 et seq. (1966). We are satisfied that Article 38, sections 1 and 4 cannot be applied constitutionally to an indigent defendant unless he is given an opportunity to tell the judge that he is financially unable to pay the fine before he is committed for nonpayment, so that the judge may take that factor into account. The judge may then tailor the fine to the situation of the particular defendant, by allowing him to pay the fine in installments or by reducing the fine, thereby reducing the period the defendant will have to serve in lieu of paying the fine.[10a] The commitment or other record should show that the decision was made deliberately by the judge after hearing from the defendant, either before or after sentence, on the question of his ability to pay the fine imposed.

See Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); Stevens v. Warden, 238 F.Supp. 334 (D. Md.1965), aff'd 382 F.2d 429 (4 Cir. 1967). If this is done, it will be clear that the commitment reflects only the substitute punishment for the crime, the imposition of which would not deprive an indigent defendant of the equal protection of the laws. Kelly v. Schoonfield, supra. It will further be clear that the judge has considered the period of incarceration to be reasonable under all the circumstances, and that such incarceration has not resulted from an arbitrary application of the statute.

█ If a defendant is given a fair hearing on the question of his ability to pay, and the judge makes his decision with respect to the amount of the fine deliberately after such a hearing, the statute, as so applied, does not deprive the defendant of due process. See Palko v. Connecticut, Adamson v. California, and Griswold v. Connecticut, supra.

The evidence shows the Maryland judges and magistrates do not always consider the financial circumstances of the particular defendant and impose a sentence appropriate to those circumstances. Counsel in this case have concentrated on the practice in the Municipal Court of Baltimore City, where seventeen judges hear a very large number of cases, some of which are ordinary criminal cases and some traffic cases.

The stipulation and the evidence in this case show that in the usual case resulting in a fine in the Municipal Court the following procedure occurs. The judge, after hearing the case, pronounces sentence and enters the amount of the fine in the docket book. Up to that time, especially in traffic cases, the judge probably has not discussed with the defendant his ability to pay the fine in full or in installments. Immediately after sentence is imposed, most defendants go

---

10. See our earlier opinion in this case, and the bill which passed the Maryland Senate at the 1969 Session of the Legislature (S.B. 730).

10a. We do not hold that the judge must allow the payment in installments or reduce the fine.

directly to the clerk's office or desk and pay their fines. If they do not pay their fines, a clerk transcribes the amount of the fine from the docket book onto a commitment form and fills in other information on the form, which does not include information with respect to the defendant's ability to pay the fine. The clerk ordinarily submits the commitment forms to the judge at the conclusion of the session.[11] Many, but not all, judges regularly inquire about the circumstances of the defendant before signing the commitment. They are not required to give a defendant a hearing on the question whether he is able to pay the fine imposed, and in some cases the judge does not grant such a hearing or make such an inquiry. A defendant often does not learn how long he will have to serve until after he has reached the jail and the appropriate calculations have been made there.

In many, probably most, instances the fine is paid within a few days after the defendant is committed. The time served for nonpayment of fines by defendants in ordinary criminal cases in the Municipal Court averages about 3½ days. The similar figure in traffic cases runs about 15 days, because the Municipal Court judges impose higher fines for serious traffic offenses and for "scofflaws" who are brought in after receiving many tickets, than they impose in the ordinary criminal case.

In no instance which has been brought to our attention does the time required to be served by reason of Article 38, sections 1 and 4 exceed the maximum imprisonment which could have been imposed for the offense or offenses where the statute provided for both fine and imprisonment. It is unnecessary, therefore, to decide whether any provision of the Federal Constitution or the Amendments thereto would be violated if the statute were applied in any case to require the service of a longer period than could have been imposed for the offense or offenses of which a defendant may

have been found guilty by a statute which provides for both fine and imprisonment. Compare People v. Saffore, 18 N.Y.2d 101, 271 N.Y.S.2d 972, 218 N.E.2d 686 (1966), with People v. Williams, 41 Ill.2d 511, 244 N.E.2d 197 (1969). See also Beckham v. Purdy, (S.D.Fla.1969).

The intervenor was convicted of a number of offenses for which a fine or imprisonment or both were provided for by the statute itself, but was also convicted of a number of offenses under statutes which provided only for a fine, and did not themselves provide for imprisonment. The total time which he was called upon to serve is far less than the time which might have been imposed on him for his convictions under statutes which do provide for imprisonment as well as a fine. Nevertheless, we must consider whether Article 38, sections 1 and 4 may ever be applied in cases where the statute or ordinance provides only for a fine. The necessity for some substitute punishment for repeated parking offenders as well as others is obvious, for the reasons stated in the passage quoted above from the opinion of this Court in Kelly v. Schoonfield. We therefore conclude that the application of Article 38, sections 1 and 4, to traffic statutes and ordinances which do not themselves provide for imprisonment is not unconstitutional so long as the procedures outlined herein are followed.

The evidence is uncontradicted that the three remaining plaintiffs and the intervenor in this case were never given an opportunity to tell the sentencing judge that they were financially unable to pay the fines imposed. Despite the fact that the time required to be served by the remaining plaintiffs and the intervenor was less than the jail sentences which might have been imposed on them—in the case of the intervenor, an inveterate traffic violator, very much less—this Court finds that the statute, as applied to them, deprived them of their constitutional rights.

11. The number of cases involving commitment for nonpayment of fines will average about two a day per judge, according to the statistics offered in evidence.

Plaintiffs must therefore be released from further confinement.

■ The Court does not find that all persons now being held for nonpayment of fines have been deprived of their rights. As noted above, the evidence indicates that in many cases the sentencing judge did consider the circumstances of the defendant and deliberately approved the final commitment after hearing from him. But the commitments offered in evidence do not show in which cases this was done. Every person now being held in jail in Maryland because of nonpayment of fines is therefore entitled to be released unless (A) he is promptly given a reasonable opportunity to present to the sentencing court his claim of indigency and is also given a prompt hearing on the question whether his sentence should be modified, or (B) the record shows that these questions were considered by the Court, or (C) he is in jail because he violated a probation conditioned upon the payment of a fine.

■ Where a commitment for nonpayment of fine is made in the future the record should show that the defendant was given a reasonable opportunity to present his financial situation to the sentencing court.

There is no merit in the points raised by plaintiffs based upon the Eighth Amendment or the Thirteenth Amendment. See United States ex rel. Privitera v. Kross, supra; Cohen v. State, 173 Md. 216, 195 A. 532, 196 A. 819 (1937); Kelly v. Schoonfield, supra.

Counsel should agree upon an order giving effect to this opinion.

WINTER, Circuit Judge (concurring in part and dissenting in part):

When the majority earlier accepted the submission of the case for final decision as to costs, and concluded that commitment for nonpayment of costs under the Maryland statute violated the equal protection clause and granted injunctive relief, I concurred in the result as to this aspect of the case; but I expressed my view that the decision should be placed upon the ground that as to costs the Maryland statute violated the due process clause. I still adhere to that view for the reasons I then set forth in my separate opinion.

At the same time I dissented from the majority's failure then to hold that commitment for nonpayment of fines under the Maryland statute was a violation of due process. To the extent that the majority now orders the release of three plaintiffs and the intervenor, I concur in their judgment. But I would enjoin future enforcement of the statutes and order the release of all defendants committed to the Baltimore City jail for nonpayment of fines, that is, all within the class on whose behalf suit was brought, on the ground that the statutes under which they were committed offend the due process clause. I continue to rest this conclusion on the views I have previously expressed, but I append a few words to point up the errors into which the majority falls:

In the abstract, I do not necessarily disagree with the majority's premise that a statute may be invalid on its face, invalid because of the manner in which it is applied generally, or invalid because of the manner in which it is applied in a particular case. I think that the Maryland statutes providing commitment for nonpayment of fines are invalid on their face. This issue the majority ignores; although, departing from its previous views, it now grudgingly concedes that the ratio of fine to days of imprisonment "seems to set a very low number of dollars for each day to be served" and that it is now "satisfied" that an indigent defendant must be "given the opportunity to tell the judge that he is financially unable to pay the fine before he is committed for nonpayment, so that the judge may take that factor into account," if the statutes are to be constitutionally applied. To justify its failure to grant immediate, broader relief—and, indeed, in laying down the conditions for future constitutional application of the statutes —the majority, in effect, says that a statute invalid on its face may be valid

because of the manner in which it is applied in particular cases, or because of the manner in which it is applied generally. I disagree that the facial invalidity of the statutes may be thus cured. Moreover, the majority's curative process necessarily requires it to rewrite the statutes—a peculiarly legislative function and one, incidentally, which the Maryland General Assembly refused to undertake when it failed to enact Senate Bill No. 730 at its 1969 session—in order to attempt to remove the constitutional infirmities. The majority does not simply interpret narrowly existing language of the statutes—an approved judicial approach to preserve constitutionality; it implants additional requirements which the statutes have never prescribed and their language will not support, thus flagrantly invading the legislative domain.

Presumably, if the Maryland courts, generally or in particular cases, do not comply strictly with the majority's admonitions as to how the statutes should be administered, the majority will grant injunctive or habeas corpus relief. But the point is that the statute does not *require* the majority's concept of constitutional administration and, notwithstanding the deference to which the majority's views are entitled, indigent defendants may still be deprived of liberty, without a judicial determination of the appropriateness of the duration of loss of liberty with which they are faced under statutes which equate dollars to days on a totally irrational basis, and will be required to seek the intervention of a federal court to obtain relief.

The majority cites no authority, and I can find none, to sustain the proposition that the facially invalid Maryland statutes may be saved by particular or general future benevolent administration, the necessity for which the Court writes into the statutes. Impressive authority is to the contrary. Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964), held invalid § 6 of the Subversive Activities Control Act for overreaching, under which passports were denied to two top-ranking Communist Party leaders, as against the government's argument that even if invalid generally, it was valid as applied to these individuals. This argument the Court rejected because "[t]he clarity and preciseness of the provision in question make it impossible to narrow its indiscriminately cast and overly broad scope without substantial rewriting." 378 U.S. at 515, 84 S.Ct. at 1669. It also quoted approvingly from Scales v. United States, 367 U.S. 203, 211, 81 S.Ct 1469, 6 L.Ed. 2d 782 (1961), that "[while the] Court will often strain to construe legislation so as to save it against constitutional attack, it *must* not and will not carry this to the point of perverting the purpose of a statute" or judicially rewriting it. (Emphasis supplied.) 367 U.S. at 211, 81 S.Ct. at 1477.

N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), concerned a Virginia statute prohibiting the giving of advice to another that his legal rights had been infringed and referring him to a particular attorney for assistance. The statute was held unconstitutionally broad, and, notwithstanding that Virginia's highest court had construed the statute in the instant case so as to give it a precise meaning, the Supreme Court pointed out that it would not hesitate "to take into account possible applications of the statute in other factual contexts besides that at bar." 371 U.S. at 432, 83 S.Ct. at 337. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L. Ed.2d 205 (1959), a case involving an obscenity ordinance, expressed the same concept when the Court said: "the usual doctrines as to the separability of constitutional and unconstitutional applications of statutes may not apply where their effect is to leave standing a statute patently capable of many unconstitutional applications, threatening those who validly exercise their rights of free expression with the expense and inconvenience of criminal prosecution." 361 U.S. at 151, 80 S.Ct. at 217.

So, too, in Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed.

1093 (1940), where the Court held invalid an anti-picketing statute, it was specific in stating that "[t]he section [of the Code] in question must be judged upon it face" (310 U.S. at 96, 60 S.Ct. at 741), assigning as a reason therefor "[p]roof of an abuse of power in the particular case has never been deemed a requisite for attack on the constitutionality of a statute purporting to license the dissemination of ideas." 310 U.S. at 97, 60 S.Ct. at 741. See, too, Lovell v. City of Griffin, 303 U.S. 444, 451, 58 S.Ct. 666, 82 L.Ed. 949 (1938), which held "invalid on its face" a licensing ordinance for the distribution of literature despite a strong suggestion that the ordinance may have been vaild if limited to obscene literature or "literature advocating unlawful conduct." See also, Whitehill v. Elkins, 389 U.S. 54, 88 S.Ct. 184, 19 L.Ed.2d 228 (1967); Brown v. Louisiana, 383 U.S. 131, 143, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966) (Brennan, J., concurring in the result).

These cases all involved licensing or regulatory statutes which infringed upon First and Fourteenth Amendment rights, but they are no less applicable here where personal liberty is at stake. Thus, to me, the majority's basis of decision is *sui generis* and counter to settled authority.

Generally, I accept the majority's broad findings of fact. Significantly, the majority cannot find, and I could not find, that every defendant who is committed for nonpayment of a fine has a judicial determination of his indigency and a judicial determination of what commitment is fair and proper in lieu of payment of the fine which was imposed. Indeed, the plaintiffs to whom the majority grants relief were denied both. This, it seems to me, is the best proof of the arbitrariness and irrationality that the statute countenances. It is also compelling proof of what may occur in the future. Moreover, the intervenor scoff-law has been ordered imprisoned for nonpayment of fines for traffic offenses for which no imprisonment is provided, and the testimony before us was that the general practice in traffic cases, where the statutes often provide only for a fine and not imprisonment, is *not* to make inquiry concerning possible indigency, although admittedly the number of commitments is minimal.

To my mind, it is constitutionally impermissible to commit a defendant for nonpayment of a fine upon conviction of an offense which does not provide for imprisonment as a possible punishment. The reason for this conclusion is that, except in theoretical and unusual circumstances, imprisonment is a greater punishment than a fine. Hence, imprisonment for nonpayment of a fine *is* punishment in excess of the maximum permitted for the substantive violation prescribed by the legislature. The existence of the statutes, the enforcement of which I would enjoin, does not cure the defect; because they become operative only to the indigent and thus applied would flagrantly deny equal protection of the laws. *Kelly* is not to the contrary. It arose solely in the context of statutes which authorized imprisonment, as well as a fine, for their violation. Nor may the problem be as neatly avoided as the majority attempts by pointing to the fact that the intervenor will not be required to serve time in excess of "the time which *might* have been imposed on him on his convictions under statutes which do provide for imprisonment as well as a fine" (emphasis supplied). The fact is that he was not sentenced to imprisonment by the judicial officer whose duty it was to fix punishment under those statutes which would have authorized imprisonment, and he will be required to serve time for committing offenses for which the legislature has not authorized confinement.

I call attention to the fact that indigent defendants committed to the Baltimore City jail by the Criminal Court of Baltimore for nonpayment of fines are also within the class for which suit is brought. No evidence was presented to show how the statutes are administered in that court, so that whatever findings may be made with regard to practices in

the Municipal Court the record is barren as to how the statutes are applied in another significant area.

I, therefore, concur in part and dissent in part as indicated herein.